John W. GARDNER, Secretary of Health, Education and Welfare, Appellant,

v.

Wanda U. WILCOX, Appellee.

No. 20369.

United States Court of Appeals Ninth Circuit.

Sept. 19, 1966.

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, J. F. Bishop, Attys., Dept. of Justice, Washington, D. C.; Frank R. Freeman, U. S. Atty., Yakima, Wash., for appellant.

Perry J. Robinson, Yakima, Wash., for appellee.

Before CHAMBERS, MERRILL and KOELSCH, Circuit Judges.

MERRILL, Circuit Judge:

This action was brought by appellee to review a final decision of appellant Secretary of Health, Education and Welfare, denying appellee's claim for social security benefits based upon the alleged death of appellee's husband. The Secretary's denial was based upon a decision by a Department hearing examiner ad-

verse to appellee, and the Department's affirmance of that decision on administrative appeal. The hearing examiner found that there was no evidence of death and ruled that the presumption of death provided by Social Security Administration Regulation [1] did not apply, since the absence of appellee's husband for more than seven years was not unexplained. The District Court reversed the Secretary's decision, in effect holding as a matter of law that on the record the disappearance was unexplained, and accordingly under the Department's regulation death must be presumed. Summary judgment was rendered for appellee and this appeal by the Secretary followed.

The facts relating to the disappearance are not disputed. Appellee and her husband were married July 2, 1937, in Yakima, Washington. The husband was last seen by appellee on March 30, 1953. At the time of his disappearance there were two children born of the marriage and a third was born three months later. The husband was employed as administrative assistant by the State National Guard. On March 30, believing that his job would soon be terminated, he went to Pasco, Washington, seeking employment as a machinist. The following day the National Guard called appellee in an effort to reach her husband, stating that a sum of money under his charge was missing. Appellee telephoned her husband in Pasco the next day and informed him of the call. He stated that he would be home directly to straighten matters out. On April 2 appellee received a letter from him which can only be read as expressing an intent to commit suicide.[2]

Appellee immediately contacted the sheriff. The husband's car was found at the point specified in his letter, near a river which at that time of year was deep and swift. A search failed to discover the husband's body. On April 15 a state warrant was issued for the husband's arrest for grand larceny by embezzlement in the sum of $1800. His name was placed on the FBI wanted list. The record does not show that anyone (including the police, the FBI and the So-

1. 20 C.F.R. § 404.705 (1951) provides as follows:

"Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit * * * under section 202 of the act, and such individual has been unexplainedly absent from his residence and unheard of for a period of seven years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died."

2. "My dearest Wife:

I don't know just how to say what I have to say. I am so confused and lonely. I guess I am a little bit loose in the head. For three days and 2 nights I have worried and tried to figure a way out of this mess and there doesn't seem to be any way out for me.

I haven't got that money as I told you I did and I don't think I can even account for it. I don't know how it could be so much but it must be so. If there wasn't so much involved I might be able to get it together and pay it back some day but the State would never give me that much time and consideration. I don't deserve it any way. I am a rotten egg and I now realize how badly I have treated you. I can't make it up to you now so the best way to clear up the whole mess is to do what I am going to do. I have prayed for a miracle but can't seem to raise one. I don't know how to say goodby to Billy or Marva nor the other one as yet not with us. Perhaps you can explain to them someday.

I thought of running away but that is no good either. The law would find me some day and then it would be worse than it is now.

I have a terrible cold. My lung is so sore and I can hardly breathe it hurts down deep and my head is splitting.

You will find the car parked just off the highway in Prosser. Go to the surve [sic]. Just after you cross the bridge and turn right at the first intersection.

I wish I could have talked to you about this trouble and maybe you could have thought of something. I locked the keys in the car so be sure and send or bring yours.

Goodby now and try not to think too hard of me. In spite of all this, I love you dearly,

Bill."

cial Security Administration) has heard of him since.

Upon this appeal the position of the Secretary, in brief, is that the District Court has usurped the Secretary's function of fact finding; that it has rejected the inferences drawn by the Secretary (through the hearing examiner) and has substituted its own inferences. Our attention is drawn to section 205(g) of the Social Security Act, 49 Stat. 624 (1935), 42 U.S.C. § 405(g) (1964), which provides in part:

> "Any individual, after any final decision of the Secretary * * * may obtain a review of such decision by a civil action * * *. The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The nature of the presumption of death and the scope of judicial review of the Secretary's determination with reference to it were dealt with by this court recently in Secretary of Health, Education and Welfare v. Meza, 368 F.2d 389 (9th Cir. 1966). It was there held that when the facts show that a person has been absent from his residence and unheard of for a period of seven years, a presumption arises that he is dead. The burden of explanation then shifts to the Secretary, and the presumption can be dissipated "by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life."

█ In that case it was held that no evidence of explanatory facts at all had been presented. As a matter of law there had been no explanation. Such is not the case before us. The fact that the absent husband (as he himself anticipated) was about to be charged with embezzlement is sufficient under the stated standard to meet the requisites of an explanation. It cannot here be said as matter of law that no explanation has been forthcoming. For this reason the

judgment of the District Court must be reversed.

The trouble in this case is that the hearing examiner apparently has misconceived the extent of his fact-finding function. From his decision and colloquy with counsel at the time of the hearing we are convinced that in his view, if *any* explanation is forthcoming, then it must be said as matter of law that the absence is not unexplained. The burden thus was placed on the claimant to establish that the absence was "unexplainable other than on the basis of death."

█ This position we rejected in Secretary of Health, Education, and Welfare v. Meza, supra, as placing an impossible burden on the claimant. Further, we there held:

> "If evidence of such [rational explanatory] facts is presented, it is for the Secretary, not the courts, to decide whether to credit the proof, and if it be credited, whether, in the light of the evidence, to draw the permissible inference that the missing person is alive." 368 F.2d at 392.

Although the Secretary has come forward with an explanation it still remains for the hearing examiner to choose between the alternative probabilities of life or death in the light of all the known facts. The balancing of probabilities and likelihoods is his essential fact-finding function.

Here he must balance the probabilities of suicide and flight,[3] and, if flight and simulated suicide be his choice, must still consider the probabilities of subsequent death. Consideration must be given, among other factors, to the absentee's age and health, the presence or lack of stability in character, the extent and strength of family ties, the efforts of the FBI to find the fugitive.

█ We would agree with the Secretary that when, upon such consideration, a determination is made that an explanation exists, and further that in the light

---

3. On appeal the Secretary asserts that he did make his choice in this respect, but we find no expression to that effect. It would seem, rather, that he found the making of any choice to be unnecessary in the light of the appellee's failure to meet her supposed burden.

of such explanation life is more probable than death, it is not for the courts to substitute their judgment. From the decision of the hearing examiner it does not appear that such consideration was given here.

The judgment of the District Court must be vacated and the matter remanded to the hearing examiner for further action in the light of our rulings here and in Secretary of Health, Education and Welfare v. Meza, supra.

Reversed and remanded to the Secretary for reference back to the hearing examiner and for other proceedings consistent with this opinion.

CHAMBERS, Circuit Judge (dissenting):

Had I been a member of the panel that sat in Secretary of Health, Education and Welfare v. Meza, supra, I would have concurred in that opinion. On the authority of that case, I would affirm the district court here. I can't explain to Mrs. Wilcox the difference in the two cases.

I take some small consolation from the fact the majority tells the Secretary that on the facts here, the hearing examiner and he can find that the disappearance is unexplained for the required period of time.