SECRETARY OF HEALTH, EDUCA-
TION AND WELFARE of the United
States of America, Appellant,

v.

Lucy MEZA, Appellee.

No. 20037.

United States Court of Appeals
Ninth Circuit.

Aug. 31, 1966.

Rehearing Denied Nov. 16, 1966.

John W. Douglas, Asst. Atty. Gen., Alan S. Rosenthal, J. F. Bishop, Attys., Dept. of Justice, Washington, D. C., Manuel L. Real, U. S. Atty., Los Angeles, Cal., for appellant.

Nixon A. Lange, Huntington Park, Cal., for appellee.

Before MERRILL and DUNIWAY, Circuit Judges and TAVARES, District Judge.

DUNIWAY, Circuit Judge:

The Secretary cf Health, Education and Welfare appeals from an order of the District Court setting aside a decision of the Secretary. The proceeding was brought under 42 U.S.C. § 405(g). In that proceeding the appellee, Lucy Meza, sought review of a denial by the Secretary of her application for mother's and children's benefits under 42 U.S.C. § 402(d) and (g). We affirm.

The sole question presented to the Secretary was whether Lucy Meza's husband Domingo was dead. There was no direct proof of his death. Lucy relied upon the fact that he had been absent and unheard from for more than seven years. This brought into play a regulation of the Secretary (20 C.F.R. 404.705) which provides in pertinent part:

> "Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit * * * under section 202 of the Act, [42 U.S.C. § 402] and such individual has been unexplainedly absent from his residence and unheard of for a period of seven years, the Administration, upon satis-

factory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died."

The validity of this regulation is not attacked. The Secretary ruled that Domingo had not been unexplainedly absent for the requisite period. The Act, section 405(g), 42 U.S.C. provides:

"The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive * * *."

The Secretary contends that the finding is so supported and that therefore the District Court erred in setting it aside.

On May 14, 1945, Domingo was divorced in Texas from his wife Amelia. There were three children of that marriage, aged 16, 14 and 12. Domingo was not ordered to pay alimony, but was ordered to pay $40 per month for their support. In November, 1945, Domingo married Lucy in Los Angeles, California. At that time Lucy had two children by a prior liaison. Two children were also born of the marriage of Domingo and Lucy—Juanita on August 4, 1946 and Alberto on July 10, 1948. At the time of the marriage Domingo promised to adopt Lucy's two children, but he never carried out the promise. He did, however, support them as well as Lucy and Juanita. He was a laborer and Lucy considered him a good provider and a man of temperate habits. He had never had any illnesses, drank very little, never had any trouble with the police, never spoke of suicide, and never had any mental trouble. He and Lucy had no substantial bills outstanding, and their home was paid for in full. They had no quarrels, although, because of a substantial difference in their ages, they were "not close." It does not appear whether Domingo's former wife ever collected the $40 a month for the support of their children or in any way attempted to compel Domingo to support them. On the other hand, there is no evidence that he did not support them. There is, of course, a presumption that he complied with the Texas decree. At one time, while Domingo was living with Lucy,

he received a letter from one of the children stating that he was a bad father and that the child never wanted to see him. Lucy knew of no reason why Domingo would disappear or commit suicide. Nevertheless, on June 19, 1948, while Lucy was out of the house shopping for a Father's Day present, Domingo took his clothing, his car and his week's pay and left the home, never to return. The second child, Alberto, was not born until a month later. Lucy made efforts to discover Domingo's whereabouts through the Missing Persons Bureau of the Los Angeles Police Department and through friends and neighbors. All of her inquiries were fruitless.

Sometime in late 1954 or 1955, or perhaps even later, Lucy inquired at the local Social Security office as to whether she was entitled to widow's and children's benefits. The record does not show that a formal application was made at that time. Apparently, however, as a result of such inquiry, the local office obtained information through the Social Security system showing that as late as the third quarter of 1954 Domingo was working for an employer in Houston, Texas, who reported his earnings and paid Social Security taxes thereon for that quarter. Lucy was advised of this fact and, because it thus appeared that Domingo was still alive, did not press her application. There is no evidence that Domingo ever learned of Lucy's or the Administration's inquiries about him.

More than seven years later, in December of 1961, Lucy, at the suggestion of the local Social Security office, petitioned the Superior Court of Los Angeles County, California, for a determination that Domingo was dead and for her appointment as administratrix of his estate. This petition was granted on January 3, 1962. On January 10, 1962, Lucy filed an application for survivors' insurance benefits in which she alleged that Domingo was dead. She claimed that he died on June 19, 1955, which is seven years after the date of his first disappearance. This date corresponds with the date of

death as found by the California Superior Court.

The last record of Domingo's whereabouts is his Social Security employment record showing that he was employed in Houston, Texas during the third quarter of 1954, and his employers' statement that he quit his job, without notice or explanation, on July 14, 1954. After that time Lucy continued to make inquiries at the Missing Persons Bureau and in other ways, including an inquiry of his brother, but neither she nor anyone else, so far as appears, has ever heard any more of Domingo.

The hearing examiner found that Domingo had been absent for almost fifteen years and had been unheard from for over seven years. He nevertheless denied Lucy's claim. He based his decision entirely upon his conclusion that Domingo had not been unexplainedly absent. His conclusion that the absence was not unexplained rested principally upon the fact that the disappearance in 1948 was not unexplained because evidence showed that Domingo was still alive as late as 1954. He also relied upon the fact that Domingo quit his job in Houston on July 14, 1954 without notice, and that in 1951 he had told his employer that he had no dependents and had then given the employer a fictitious, or at least an erroneous, address. He also states that Domingo "was possibly trying to avoid supporting his wife and family and/or trying to avoid paying child support to his first wife as was ordered in the 1945 Houston, Texas divorce decree" and that therefore "there would appear to have been ample reason for him to keep his whereabouts unknown." This decision was affirmed by the Appeals Department of the Social Security Administration without further findings.

The District Court in its decision stated that these findings relate to the 1948 disappearance and that there were no further findings made or inferences drawn in explanation of the second disappearance after Domingo quit his job in Houston in July, 1954. It concluded that not only was there no substantial evidence, but that there was no evidence at all, explaining the later disappearance. On this basis it set aside the Secretary's determination. However, the hearing examiner did consider the 1954 disappearance. In essence, he found an explanation for the 1948 disappearance and carried it over to the 1954 disappearance.

We think that the District Court's decision is correct. Read literally, the regulation seems to say that the presumption of death never arises unless it is shown that the absence is unexplained. We do not, however, accept that reading, as it would place an impossible burden of showing a negative upon an applicant such as Lucy. The most that the applicant can be expected to do is to show, as Lucy did, that the applicant has no explanation. We think that the true meaning of the regulation is that when the facts show that a person has been absent from his residence and unheard of for a period of seven years, a presumption arises that he is dead. Such a presumption is based upon the fact that people do not ordinarily disappear for no apparent reason and sever a long established pattern of living and all contacts with family and friends. The presumption can then be dissipated in two ways. One would be by presenting evidence that the missing person is alive. This is the kind of "evidence to the contrary" referred to in the regulation, and here it defeated the presumption arising from a seven year's absence following Domingo's 1948 disappearance. Domingo's Social Security record showed that he was alive. The other showing would be by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life. If evidence of such facts is presented, it is for the Secretary, not the courts, to decide whether to credit the proof, and if it be credited, whether, in the light of the evidence, to draw the permissible inference that the missing person is alive.

Here, we think, no such facts were proved in relation to the 1954 dis-

appearance. The proof shows that for some years after 1948 Domingo was alive and was working at covered employment, under his own name and Social Security account number. He had thus worked in Houston since 1951. In short, he had established a new pattern of living. But in 1954 his then established pattern of living again changed, and he has, since July 1954, been absent and unheard of. In relation to that absence, there are no facts shown by the record that rationally explain the second disappearance at all, much less in a manner consistent with life. The Secretary's conclusion that Domingo has not been unexplainedly absent since July 1954 is supported only by speculation. We do not think that Lucy is required to negate, by the presentation of evidence, every possibility but that of death. This view is supported by the regulation, which states that the Secretary will presume that the individual has died "in the absence of any evidence to the contrary." We think that the Secretary had the burden of showing an explanation, and that, as to the second disappearance, he has wholly failed to meet that burden.

Affirmed.

Opinion on Petition for Rehearing

PER CURIAM:

The Secretary of Health, Education and Welfare petitions for a rehearing and presents, in support of the petition, certain evidence indicating that Domingo Meza is alive. The evidence was obtained by the Secretary on the same date that our opinion was filed.

■ We do not think that we should grant a rehearing on this ground. This is because the order from which the appeal was taken, and which we affirmed in our opinion, reads in part as follows:

"IT IS ORDERED that the finding and the conclusion of the Secretary of Health, Education and Welfare that there is no presumption of the death of Domingo P. Meza, because his ab-

sence since July of 1954 is not unexplained within the meaning of 20 CFR 404.705, are hereby vacated and set aside; and the application of Lucy Meza (Claimant), Domingo Meza (Wage-Earner), is hereby remanded to the Secretary of Health, Education and Welfare for further administrative proceedings."

We think that the proper forum in which the Secretary should offer his newly discovered evidence is the administrative proceeding referred to in the judgment of the District Court. The petition for a rehearing is therefore denied.