**Harriet NEWMAN, on her own behalf and as mother and natural guardian of Gaile P. Newman, Plaintiffs,**

**v.**

**John GARDNER, as Secretary of the Department of Health, Education and Welfare, Defendant.**

**No. 65-C-1254.**

United States District Court
E. D. New York.

Jan. 24, 1967.

Sol Rosenbluth, New York City, for plaintiffs.

Joseph P. Hoey, U. S. Atty. Eastern District of New York, for defendant; Michael Rosen, Asst. U. S. Atty., of counsel.

ZAVATT, Chief Judge.

The defendant has moved for summary judgment. The plaintiff has made a cross-motion for summary judgment. The defendant's motion is denied. The plaintiff's cross-motion is granted.

This is an action pursuant to section 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to review the final decision of the Secretary of Health, Education, and Welfare (hereinafter Secretary) which held that the plaintiff Harriet Newman is not entitled to mother's insurance benefits under section 202(g) of the Act, 42 U.S.C. § 402(g), or to child's insurance benefits on behalf of her daughter Gaile P. Newman under section 202 (d) of the Act, 42 U.S.C. § 402(d). The basis for the Secretary's decision is that plaintiff's husband, William Newman, has not been shown to be deceased and cannot be presumed to be dead under 20 C.F.R. § 404.705.[1] The issue presented is whether the finding of the Secretary, that plaintiff's husband cannot be presumed to be deceased, is based upon the substantial evidence required by 42 U.S.C. § 405(g) to render that finding conclusive.

Plaintiff filed her application for survivor's insurance benefits on October 22, 1964 (Tr. 60, 16). Her claim was denied by the New York Payment Center on December 31, 1964 upon the ground that the death of the wage earner, William Newman, had not been established. This determination was affirmed by the Appeals Council on April 9, 1965 (Tr. 78–81, 16). Pursuant to plaintiff's request, filed April 23, 1965, a hearing was held on June 9, 1965 (Tr. 16). The Hearing Examiner, in an opinion dated July 14, 1965, denied plaintiff's application (Tr. 4–8). This decision became final on October 21, 1965, when the Appeals Council denied plaintiff's request for review (Tr. 1). On December 15, 1965, within 60 days from this final determination, the plaintiff filed a complaint in this court requesting a review of the final determination of the Secretary.

Plaintiff and William Newman were married in New York City on March 13, 1944 (Tr. 86). Shortly thereafter, Mr. Newman went on active duty in the United States Army and served in the Dutch East Indies prior to his discharge on April 21, 1946 (Tr. 87). While in the service, Mr. Newman was treated for a head injury and headaches (Tr. 103). Plaintiff testified that, shortly after her husband's discharge, they were separated for a month or two; that her husband was nervous and confused; that he left of his own accord and returned of his own accord; that there were no other separations (Tr. 63, 21, 22). Plaintiff and William Newman had two children, the youngest of which, Gaile P. Newman, is one of the persons on whose behalf this proceeding has been brought.

In November 1956, plaintiff and William Newman, together with their two children, left New York City for Miami, Florida. The Newmans drove to Florida in a new automobile which Mr. Newman had purchased a few months previously

---

1. 20 C.F.R. § 404.705

"§ 404.705 Presumption of death.

Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit or a lump-sum death payment under section 202 of the act, and such individual has been unexplain-edly absent from his residence and unheard of for a period of seven years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died."

(Tr. 27–28). Upon their arrival in Miami, the Newmans rented an efficiency apartment in a hotel. Mr. Newman rented a safe deposit box in a Miami bank in which to place important papers that he had brought with him from New York. (He had closed his safe deposit box in New York City (Tr. 36).) Plaintiff testified that, while in Miami, her husband looked for work but told her little of his financial and business affairs (Tr. 35). On April 7, 1957, Mr. Newman left the family's apartment early in the morning and did not return (Tr. 38). Mrs. Newman notified the Miami police (Tr. 39) and obtained a court order to have her husband's safe deposit box opened. It was empty. Records of the bank indicated that Mr. Newman had emptied it two days prior to his disappearance (Tr. 40–41). Mr. Newman's car was gone. It was learned in July of 1957 through the Commercial Credit Corporation which had financed the purchase of the car that the car had been abandoned in San Francisco, California, with no evidence of an accident (Tr. 48, 71, 92). The records of the Social Security Administration reported earnings on one William Newman for the third quarter (June-September) of 1957 while employed in California (Tr. 82–85).

On or about June 18, 1957, plaintiff returned to New York whereupon she notified the New York police, Missing Persons Bureau, and contacted relatives (the father and sister) of her husband and two of his former business associates (Tr. 42) none of whom had heard from him or knew of his whereabouts.

The question involved is whether plaintiff's husband "has been unexplainedly absent from his residence and unheard of for a period of seven years." 20 C.F.R. § 404.705, footnote 1 supra. The Secretary reads this regulation very strictly. He argues that the absence of the husband began when he left his residence in Miami; that that absence can not give rise to a presumption of death, because he was alive and working in California during the third quarter of 1957; that, even though he has been unheard from for more than seven years after the close of that quarter, that absence can not be related back to his original disappearance from his residence in Florida. It is on the basis of such a wooden interpretation of the said regulation that the Hearing Examiner found that:

"there exist circumstances which reasonably account for the wage earner not being heard of, and that his absence and failure to communicate with his immediate family or friends is reasonably explained without assuming death and that a presumption that the wage earner is deceased is not warranted." (Tr. 8.)

█ █ Where there has been an initial disappearance, followed by evidence consistent with life, and then silence for more than seven years, the courts have held consistently that the seven year period begins to run from the last time the wage earner was known to be alive and that an applicant, such as this plaintiff, is not required to negate, by the presentation of evidence, every possibility but that of death. Secretary of Health, Education, and Welfare v. Meza, 368 F.2d 389 (9th Cir. 1966); Dowell v. Gardner, 263 F.Supp. 905 (S.D.Ohio April 22, 1966). The facts in *Meza* and *Dowell* are substantially similar to those in the instant case. See also Smith v. Celebrezze, 243 F.Supp. 955 (S.D.Iowa 1965).

Settle an order, within ten (10) days from the date hereof, denying defendant's motion for summary judgment and granting plaintiff's cross-motion for summary judgment.