Ada **BLEW**, in her own behalf and as mother and natural guardian of Rodney Ballard, Plaintiff,

v.

Elliott L. **RICHARDSON**, Secretary of Health, Education, and Welfare, Defendant.

Civ. A. No. RI–367.

United States District Court, S. D. Illinois, N. D.

June 20, 1972.

------

H. Reed Doughty, Winstein, Kavensky & Wallace, Rock Island, Ill., for plaintiff.

Max J. Lipkin, Asst. U. S. Atty., Peoria, Ill., for defendant.

## DECISION AND ORDERS

ROBERT D. MORGAN, District Judge.

■ The Complaint herein seeks review of a decision of the Secretary of Health, Education, and Welfare, which denied Social Security insurance benefits to Rodney Ballard, as the child of wage earner Ernest Ballard. The Secretary declined to apply the presumption that said Ernest Ballard is deceased, by operation of Section 404.705 of Social Security Administration Regulation No. 4(20 C.F.R. § 404.705),[1] on the ground that the absence is not unexplained. The record before the Secretary has been filed and both sides have appropriately moved for summary judgment here. This court must review the record and affirm the Secretary's decision if it is supported by substantial evidence. Kutchman v. Cohen, 425 F.2d 20 (C.A. 7 1970).

1. This regulation provides: "Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit or a lump-sum death payment under section 202 of the [Social Security Act] and such individual has been unexplainedly

There is no important dispute in the facts recited by the Hearing Examiner, as follows:

"The testimony presented at the oral hearing and the documentary evidence serves to establish that the claimant married Ernest Ballard July 6, 1955. Prior to this marriage and to August 1952, it appears that the same Ernest E. Ballard had previously been known as Ernest Bullard but notified the Social Security Administration of the change of his family name in August 1952. The claimant at the hearing stated that this change in name had surprised members of his family when they found out about it. At the time of the claimant's marriage to the wage earner, the claimant stated that she had been working and had saved money from her work. At the time of the wage earner's disappearance, the claimant stated that she was $6000 in debt and to relieve herself, filed a bankruptcy proceeding. Some six or seven months after her marriage to Ernest Ballard, she found out that the wage earner had also gone by the names of "Earl" and "Bullard". During the time they lived together as man and wife, that is July 6, 1955 and November 15, 1958, the family moved several times and preceding the wage earner's disappearance on November 15, 1958, the claimant had returned to her mother's home in Illinois. The wage earner apparently then communicated with the claimant at her mother's home requesting that he be permitted to see their child, Rodney, who had been born January 9, 1958. He came to the mother's home but at the railroad station was picked up by the police and jailed four days for nonsupport. The police had been notified by the claimant of the wage earner's

absent from his residence and unheard of for a period of seven years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died."

expected arrival in town. At a court hearing the wage earner signed an agreement to support the child, was released from jail and at the same time the claimant told the wage earner that as long as he supported his child, he could see the child. The wage earner reportedly said that he would be out that afternoon to see the child but he did not show up and has not been seen since by the claimant or child. The claimant has inquired of friends and relatives of the whereabouts of the wage earner after November 15, 1958 and she has also addressed some letters to counties in Michigan where they had lived asking for his whereabouts. No information as to his whereabouts was ever received from any of these sources."

Based upon this set of facts, the Hearing Examiner concluded:

"Regardless of this fact, the wage earner's absence for more than seven years does not appear to be an unexplained absence. The family's many moves, the wage earner's expensive habits, his instability, a separation in the marriage that occurred before his disappearance, and an arrest brought about by the information that the claimant furnished the police would suggest much domestic discord existing since the marriage of the claimant and the wage earner on July 6, 1955. The wage earner was apparently in good health and may well have found reason to disappear and escape the discord he found in his home."

That "explanation" of the wage earner's absence was accepted by the Secretary as rebuttal of the presumption of death established by the regulation. The complaint seeks reversal of that decision.

This is a case of first impression in this judicial circuit. Reported cases from other circuits appear to be inconsistent and conflicting in legal interpretation of the regulation. Also, the reported cases sometimes fail to adequately distinguish between, or, seemingly, to recognize a distinction between, the concepts of burden of proof imposed by the regulation and the quality of evidence which will support a determination that the continued absence of a wage earner from his family is not unexplained.

The court is of the opinion that the allocation of burden of proof was correctly defined and delineated by the Court of Appeals of the Ninth Circuit in Secretary of Health, Education and Welfare v. Meza, 368 F.2d 389 (C.A. 9 1966). When it is contended that a wage earner must be presumed to be dead by operation of the regulation, it is not necessary for the applicant to negate every possibility except that of death. The applicant has the burden of proving that the wage earner has been absent from his residence for a period of seven years and that the applicant has no explanation for such absence. Such proof makes a prima facie case, raising the presumption that the wage earner is dead. The burden of proof then shifts to the Secretary to adduce evidence that the wage earner is alive, or evidence of facts "that rationally explain the anomaly of the disappearance in a manner consistent with continued life" of the wage earner. Absent such evidence in explanation of the disappearance, the presumption of death is not overcome. Ibid, at 392–393; to same effect, Newman v. Gardner, 263 F.Supp. 58, 60 (E.D.N.Y.1967).

This applicant did sustain her burden of proof to raise a presumption of Ballard's death. The question remains whether there is substantial evidence which tends to rebut that presumption and support the Secretary's determination that his absence is "not unexplained."

The plaintiff contends that there is no evidence to overcome the presumption of death. The Secretary takes the position that there is evidence of events and circumstances preceding Ballard's disappearance which tend to explain his continued absence.

Five reported cases which have considered the issue of presumption of death are cited by the respective parties.[2] Among them are cases tending to support each side of the coin. The conflict among such cases relates to what this court deems to be a necessary distinction between the probative weight to be accorded to evidence of circumstances antedating the wage earner's disappearance as contrasted to evidence of facts and circumstances following such disappearance. Strangely, no case articulates such distinction.

Without so specifically stating, the court in the *Meza* case refused to credit evidence which antedated the disappearance. In that case the wage earner had been divorced in Texas in 1945, the decree requiring him to pay child support. Such payments had not been made by him. In the same year he had married the claimant. Two children were born of that marriage. In June, 1948, he left his home in Los Angeles, California, without any explanation. The claimant's attempts to locate him were fruitless. Her inquiry at a local social security office in 1955 regarding her entitlement to benefits led to the discovery that the wage earner had been employed at Houston, Texas, as recently as the third quarter of 1954. There was evidence that he had left his employment in Houston in July, 1954, without notice to his employer. The Secretary concluded that the evidence indicated that the wage earner was possibly trying to avoid supporting his family and that there was "ample reason for him to keep his whereabouts unknown." 368 F.2d at 392. The court held that the presumption of death arose from the evidence that the wage earner had disappeared in July, 1954, and proof that the claimant knew of no explanation therefor. The court further held that there was no evidence to rationally explain the continued

absence of the wage earner after July, 1954, and, thus, no evidence to rebut the presumption of death. Significantly, the court did not credit evidence of motives existing at the time of the initial disappearance as relevant to rebut that presumption.

Yet, in the same year, the Circuit Court for the Ninth Circuit rendered an apparently inconsistent decision in Gardner v. Wilcox, 370 F.2d 492 (C.A. 9 1966). In *Wilcox* the wage earner had left his home in Yakima, Washington, and had travelled to another city in the State, ostensibly to seek a change of employment. On the day following his departure, his wife was advised by National Guard officials that the wage earner had embezzled money entrusted to his care. On that same date, the wife advised the wage earner in a telephone conversation of the fact that he was accused of embezzlement. She last heard from the wage earner two days thereafter when she received a letter from him advising her where she would find the automobile which the wage earner had driven. The court characterized that letter as indicative of suicide. The automobile was located at the place indicated by the letter. All efforts by the wife, State officials, and the Federal Bureau of Investigation failed to reveal any trace, or information indicative of the continued life, of the wage earner subsequent to his writing the letter. The court, with one judge dissenting, reversed a judgment of the trial court which had set aside the Secretary's determination that the claimant was not entitled to the child's benefits. The court said that the evidence of circumstances existing at the time of disappearance could give rise to an inference of continued life of the wage earner. The claim was remanded to the Secretary with directions to make a specific finding on whether or not the wage earn-

2. Brady v. Secretary of HEW, E.D.Mich., decided February 17, 1972, cited by the Secretary, is excluded as wholly inapposite to the issue presented. In that case the wage earner, a fugitive from justice, was shown by the evidence to have been alive some eight years after his disappearance and at a time less than seven years preceding the Secretary's determination.

er's continued absence was explained. 370 F.2d at 494–495.

This court agrees with Judge Chambers, dissenting, that "I can't explain to Mrs. Wilcox the difference" between her case and the *Meza* case. 370 F.2d at 495. Such evidence as was adduced in each case can only be construed as indicative that a motive may have existed for the disappearance at the time thereof.

Miller v. Richardson, 457 F.2d 378 (C.A. 3 1972), and Dowell v. Gardner, 386 F.2d 809 (C.A. 6 1967), must be construed as holding that evidence of a motive for disappearance, contemporaneously with disappearance, may support a determination that continued absence is not unexplained.

In *Miller*, it was held that the Secretary's denial of benefits was supported by evidence that the absent wage earner had been, prior to his absenting himself, engaged in a clandestine affair with a woman other than his wife, that the woman involved had disappeared at approximately the same time as had the wage earner, and that the wage earner had told his wife in a telephone conversation several days after his disappearance that he was going to start a new life in California. All efforts to locate the wage earner in California, or elsewhere, had failed to disclose a trace of his existence.

In *Dowell*, the court held that there was evidence tending to explain the absence of the wage earner, consisting of evidence that he had a previous record of family desertion and that he had absented himself immediately following his release from jail for contempt of court in conjunction with a divorce proceeding. There was also evidence that the wage earner had been employed in Detroit during some six months immediately following his initial disappearance (386 F.2d at 810).

In contrast to *Wilcox*, *Miller*, and *Dowell*, the court, in Newman v. Gardner, 263 F.Supp. 58 (E.D.N.Y.1967), would not accept proof that life had continued for some period of time after dis-

appearance as evidence "explaining" an otherwise unexplained absence of more than seven years. The wage earner had left his apartment on a morning in April, 1957, and had never returned. Investigation revealed that he had removed all contents from a safety deposit box two days previously. He had been employed in California during the third quarter of 1957, and his automobile had been found in California, apparently abandoned, in July, 1957. There was no evidence of continued life after that time. The court said that where a disappearance is followed by evidence of continued life and then "silence for more than seven years" the presumption of death arises, the length of absence being measured from the last evidence of continued life. Absent evidence consistent with the further continuation of life, the presumption was not rebutted (263 F. Supp. at 60).

This court can conceive no significant factual distinction between *Meza*, *Wilcox*, *Miller*, *Dowell*, and *Newman*. In the first four cases there was evidence tending to show an original motivation for the disappearance. Though there was in *Newman* no evidence of any pre-existing motivation, there was proof of continued life after disappearance, showing that the wage earner had, in fact, deserted his family.

The distinction, if any, between those cases must lie in a difference in the interpretation of the regulation by the various courts. *Meza* and *Newman* hold the original disappearance, coupled with proof that no trace of the individual has been discovered for seven years thereafter, raises the presumption of death, which can be overcome only by some evidence that life did continue following the initial disappearance. *Wilcox* recognized that the presumption did arise, but held that evidence indicative of motivation to flee at the time of disappearance might sufficiently show an "explanation" for continued absence. It is not clear that the courts in either *Miller* or *Dowell* considered that the presumption ever had been raised. In fact, it seems

that those opinions must be construed as indicative of the courts' view that evidence of possible motivation explained the initial disappearance and precluded the presumption of death arising. Any other construction of those opinions would present a paradox of the courts' holding that the evidence of disappearance, and continued absence for seven years, would at once raise the presumption of death and, in the same breath, support an inference of explanation rebutting the presumption.

The Secretary's decision in this case rests upon the same paradox. The applicant adduced proof that Ernest Ballard disappeared on November 15, 1958, and that she had not seen or heard from him since that time. That proof was sufficient to raise the presumption of death under the regulation. That presumption must prevail unless rebutted by evidence of continued life of the wage earner.

Review of the entire record has convinced this court that there is no evidence consistent with the proof of continued life for Ballard after November 15, 1958. At best, the uncontradicted evidence, as hereinabove summarized, indicates that there did exist a motive for Ballard's possible desertion of the family on November 15, 1958. There is no evidence of the continued life of Ballard after that date, unless the same evidence of disappearance, which raises the presumption of death, will support an overriding inference of continued life. In the view of this court, the regulation will not permit interpretation which produces such a paradoxical result.

There is simply no evidence in the record to rebut the presumption which would be necessary to sustain the Secretary's decision. Ballard's extended absence appears to be unexplained by any evidence, except that of possible motive for leaving which existed when he disappeared. This is neither the type of explanation contemplated by the regulation nor evidence contrary to the presumption it raises.

It is ordered that the Secretary's motion for summary judgment is denied.

It is further ordered that plaintiff's motion for summary judgment is allowed; judgment is entered setting aside the decision of the Secretary denying the claim for child benefits and directing allowance of such claim as provided by law.