Ada BLEW, Appellee.

v.

Elliot L. RICHARDSON, Secretary of Health, Education and Welfare, Appellant.

No. 72-1777.

United States Court of Appeals, Seventh Circuit.

Argued June 6, 1973.

Decided Aug. 23, 1973.

5. The defendant was tried on ten counts of mail fraud and one of conspiracy. The trial encompassed ten days of testimony.

Harlington Wood, Jr., Asst. Atty. Gen., Edwin E. Huddleson, III, Atty., Dept. of Justice, Washington, D. C.,

Donald B. Mackay, U. S. Atty., Springfield, Ill., Max J. Lipkin, Asst. U. S Atty., Peoria, Ill., for appellant.

H. Reed Doughty, Franklin S. Wallace, Rock Island, Ill., for appellee.

Before SWYGERT, Chief Judge, and FAIRCHILD and STEVENS, Circuit Judges.

STEVENS, Circuit Judge.

■ An unexplained absence of over seven years gives rise to a presumption of death for Social Security purposes.[1] The question presented by this appeal is whether an explanation which is found in events preceding the absence may defeat the presumption. The district court, 344 F.Supp. 183, held that the presumption must control unless there is evidence of continued life during the seven-year period. We reverse.

After an evidentiary hearing and an appeal, the Secretary denied a claim for child's insurance benefits under § 202(d) of the Social Security Act, 42 U. S.C. § 402(d). The child's mother then brought this action in the district court pursuant to § 205(g), 42 U.S.C. § 405(g). From a summary judgment in her favor, the Secretary has appealed.

At the time of his departure in November, 1958, the wage earner was known as Ernest Ballard. Prior to his marriage to the plaintiff in July, 1955, he had been known as Earl Bullard. The Hearing Examiner found that he was an unstable person with expensive habits. During the marriage, plaintiff's savings were dissipated and she found it necessary to file bankruptcy proceedings. The family moved several times. In January, 1958, the claimant was born. Ballard failed to provide adequate support for the child. In November, 1958

---

1. "Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit or a lump-sum payment under section 202 of the Act, and such individual has been unexplainedly absent from his residence and un-

heard of for a period of seven years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died." 20 C.F.R. § 404.705.

plaintiff and the child returned to her mother's home in Kankakee. Advised of Ballard's intent to visit them, plaintiff arranged to have him arrested upon his arrival at the railroad station and jailed for non-support. At the court hearing, he signed an agreement to support the child and was released. He then expressed an intent to visit his child that afternoon, but in fact left for parts unknown.

In 1966 plaintiff filed an application for widow's insurance benefits, which was denied and is not before us. In 1969 she applied, on behalf of her son, for a child's benefit. The claim was rejected on the basis of the Hearing Examiner's determination that Ballard's "absence was not unexplained within the meaning of § 404.705." Although the record contains some hearsay evidence of continued life,[2] the Examiner's decision rested squarely on the pre-departure facts.[3]

The district court recognized that this is a "case of first impression" in this circuit and described an apparent conflict in other court of appeals decisions.[4]

2. A cousin informed a Social Security investigator in 1967 that he had not heard from Ballard "in at least two or three years," implying that he had heard from him several years after his departure; Ballard's sister said she had not heard from him for about seven years, again implying a possible communication after 1958. She also indicated that her cousin had told her that Ballard was living with another woman near Paw Paw Lake, Michigan "about four years ago." Tr. 115, 116, 119.

3. "Regardless of this fact, the wage earner's absence for more than seven years does not appear to be an unexplained absence. The family's many moves, the wage earner's expensive habits, his instability, a separation in the marriage that occurred before his disappearance, and an arrest brought about by the information that the claimant furnished the police would suggest much domestic discord existing since the marriage of the claimant and the wage earner on July 6, 1955. The wage earner was apparently in good health and may well have found reason to disappear and escape the discord he found in his home." Hearing Examiner's decision at 3. The Secretary's redetermination was, however, based in part on the evidence of continued life. Tr. 12.

4. Even if there is a conflict between the important decisions of other courts of appeals, it does not seem as grave to us as it did to the district court. In Dowell v. Gardner, 386 F.2d 809 (6th Cir. 1967) and Miller v. Richardson, 457 F.2d 378 (3rd Cir. 1972), the courts accepted the factual determination of the Secretary that pre-departure evidence effectively explained the insured's absence and, thus, rebutted the presumption that he was dead. In Gardner v. Wilcox, 370 F.2d 492 (9th Cir. 1966), the court similarly held that pre-departure evidence was relevant to deciding whether the insured's absence was explained or not, and that there was not insufficient evidence for such a finding on the facts presented. Since the Hearing Examiner had not weighed the evidence, however, but had maintained that if *any* explanatory evidence were forthcoming, the absence could not, as a matter of law, be "unexplained," the court remanded the case to him to make a specific finding of fact. The district court, and Judge Chambers dissenting in *Wilcox*, thought the decision inconsistent with the Ninth Circuit's prior ruling in Secretary v. Meza, 368 F.2d 389 (1966). In that case, plaintiff's husband had left her in 1948. As late as 1954, Social Security records showed him employed in another jurisdiction. More than seven years after 1954, plaintiff applied for benefits. The court held that 1954 constituted a second disappearance and that the Secretary's conclusion that there was an explanation for that disappearance was not supported by substantial evidence. If the case cannot be reconciled with *Wilcox*, as Judge Chambers thought, the inconsistency lies in the application of the substantial evidence test, which does not concern us here. We cannot agree with the district court that *Meza* held that pre-departure evidence was not relevant, for in that case, Judge Duniway said, "The presumption [of death] can . . . be dissipated in two ways. One would be by presenting evidence that the missing person is alive . . . . *The other showing would be by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life.*" 368 F.2d at 392 (emphasis added). Aubrey v. Richardson, 462 F.2d 782 (3rd Cir. 1972) may, however, be different, though it does not squarely contradict our holding. The court said that it disagreed with the Secretary's position that "no affirmative evidence that the insured is alive is necessary." 462 F.2d at 784. As we read the opinion, the court does

892

The court concluded that it would be paradoxical to permit the same pre-departure evidence both to create the presumption and to destroy it.[5]

In our opinion the same evidence is not self-contradictory. The evidence which raises the presumption is proof that Ballard was absent and unheard of for a period of seven years *after* November 15, 1958. The evidence on which the Secretary relies to rebut that presumption concerns events *on or before* November 15, 1958. The Secretary's analysis is not paradoxical; it may nevertheless, of course, be erroneous.

To place the legal issue in proper focus, it is useful to differentiate between the character of an explanation and the time when it is made. One may easily posit cases in which a fugitive's pre-departure statements so plainly describe an intent to disappear completely from former associates—such as an estranged spouse, muscular creditors, or a strict commanding officer—that a continued life under a new identity is at least as probable as death even though seven years have elapsed.[6] Pushed to its logical conclusion the rule which the district court has followed would mean that aft-er an absence of seven years death must be presumed no matter how strong the evidence of intent to disappear and to effect a complete change of identity, provided there were no post-departure explanation of his whereabouts. There are four reasons why we believe the Secretary's regulation did not promulgate such a rule.

■ First, history teaches us that deliberate desertions do in fact take place frequently. Whatever our personal predilections might be, the statute does not authorize the payment of benefits to deserted victims.[7] A wage earner's prolonged absence, which is more probably the consequence of deliberate desertion by a living spouse or parent than of death, should not, therefore, create a right to statutory benefits.

■ Second, the Secretary's regulation is quite obviously based on the common law presumption. As we read the common law authorities, the presumption of death resting on evidence of an absence for seven years, could be rebutted either by (a) evidence of continued life during that period, or (b) evidence of motivation that created a probability of continued life notwith-

not foreclose reliance upon pre-departure evidence. It felt, however, that more "than mere conjecture" as to possible explanations is necessary, quoting Judge Duniway's language, *supra*, but adding the gloss that the facts must be those "which do—not merely may" rationally explain the absence. 462 F. 2d at 785. The court concluded that the facts before it—including the Departmental Appeals' Council's reversal of the Hearing Examiner's award of benefits—did not amount to more than conjecture. Judge Van Dusen dissented, maintaining that facts not dissimilar to those before us, did constitute substantial evidence.

5. "At best, the uncontradicted evidence, as hereinabove summarized, indicates that there did exist a motive for Ballard's possible desertion of the family on November 15, 1958. There is no evidence of the continued life of Ballard after that date, unless the same evidence of disappearance, which raises the presumption of death, will support an overriding inference of continued life. In the view of this court, the regulation will not permit interpretation which produces such

such a paradoxical result." Decision of the District Court at 188.

6. Seven years is an arbitrary period, adopted by English courts confronted with absences of men who had run off to sea, by analogy from the statutes governing bigamy, 1 Jac. I ch. 11 (1604) and estates for life, 19 Car. II ch. 6 (1667). The origin of the rule appears to be Doe v. Jesson, 6 East 80, 102 Eng.Rep. 1217 (1805). It is said that after the elapse of seven years, the ordinary presumption of ongoing life ceases, and that of death arises. J. Thayer, A Preliminary Treatise on Evidence at the Common Law 323 (1898). See generally Frances T. Freeman Jalet, Mysterious Disappearance: The Presumption of Death and the Administration of the Estates of Missing Persons or Absentees, 54 Iowa L. Rev. 177, 181–185 (1968).

7. "Congress has not provided for benefits to children of an insured parent who has *deserted* them but only for children of an insured parent who is *dead*." Dowell v. Gardner, *supra*, 386 F.2d at 810 (emphasis in original).

standing the lack of any communication from the absentee for a prolonged period.[8] In short, pre-departure evidence was admissible to rebut the presumption.

■ Third, the text of the regulation itself quite plainly authorizes alternative means of rebutting the presumption. The regulation requires that the individual be "unexplainedly absent" and also "unheard of" for a seven-year period.[9] The presumption then applies "in the absence of any evidence to the contrary." A fair reading of this language indicates that the Secretary may adduce evidence to contradict either the unexplained character of the absence or the fact that the individual has not been heard of for seven years. If only the latter evidence were admissible, the requirement that the absence be unexplained would be meaningless. For by hypothesis every absence that meets the second requirement will be unexplained during the entire period ·subsequent to the last time anyone had heard of the absentee.

■ Finally, we are told that the Secretary's interpretation has been consistently followed in thousands of cases since the regulation was first promulgated in 1951.[10] There is no suggestion that this interpretation is not completely consistent with the governing statute. The Secretary's interpretation of his own regulation is therefore entitled to great respect. Red Lion Broadcasting Co. v. F. C. C., 395 U.S. 367, 381, 89 S.Ct. 1794, 23 L.Ed.2d 371; Universal Battery Co. v. United States, 281 U.S. 580, 50 S.Ct. 422, 74 L.Ed. 1051.

■ Having concluded that ˙predeparture evidence may support a finding that the wage earner's absence is not unexplained, the only issue which remains is whether the evidence in this record is sufficient to support that finding. This is a question of fact controlled by the "substantial evidence" standard of review. Under that standard, we are satisfied that the evidence is sufficient to support the Secretary's determination.

Reversed.

---

8. It has been plain since the presumption of death was first firmly established that evidence concerning the circumstances of departure are relevant to deciding whether, in any particular case, death will be presumed. Writing for the Supreme Judicial Court of Massachusetts in 1840, Chief Justice Shaw said: "The presumption is greatly strengthened when departure of an individual was from his native place, the seat of his ancestors, and the home of his brothers and sisters, and family connections; and still further, when it was to enter upon the perilous employment of a seafaring life *and* when he has not been heard of, by those who would be most likely to know him, for upwards of thirty years." Loring v. Steineman, 1 Metcalf 204, 211 (emphasis added). It is also clear that evidence concerning the motive for desertion may tend to rebut the presumption: "The strength of this presumption varies with the circumstances; its force depends on the character of the person, his attachment to his home, and the circumstances under which he left. . . . Evidence tending to show the desire of the absent person to conceal his iden-

tity, . . . that he was a fugitive from justice, or any other fact or circumstance surrounding his disappearance, tending to support or rebut the presumption is admissible." Wachovia Bank & Trust Co. v̇. Deal, 227 N.C. 691, 44 S.E.2d 73, 75 (1947). See also Shaw v. Prudential Ins. Co. of America, 158 Wash. 43, 290 P. 694 (1930).

9. The Common Law authorities do not appear to differentiate between "explanations" concerning the circumstances of departure, and "explanations" tending to show that the disappeared is still alive, 25A C.J.S. Death § 7, Shaw v. Prudential Ins. Co. of America, *supra*, 158 Wash. at 45–46, 269 P. at 695. It appears to us that the regulation is an attempt to state the distinction between the two kinds of evidence more precisely.

10. "We are advised by the Social Security Administration that 20 C.F.R. 404.705, the Secretary's regulation governing the presumption of death in Social Security cases, controls the disposition each year of at least 2,000 claims for survivors' insurance benefits under the Act." Brief for Appellant at 9.