Bonnie J. HIDALGO

v.

David MATTHEWS, Secretary of Health, Education and Welfare.

Civ. A. No. 760432.

United States District Court,
W. D. Louisiana,
Opelousas Division.

Feb. 28, 1977.

Gerald H. Schiff, Sandoz, Sandoz & Schiff, Opelousas, La., for plaintiff.

Donald E. Walter, U.S. Atty., Leven H. Harris, Asst. U.S. Atty., Shreveport, La., for defendant.

### RULING ON MOTION

NAUMAN S. SCOTT, Chief Judge.

Plaintiff has brought this action pursuant to Section 205(g) of the Social Security Act to obtain a judicial review of a final decision of the Secretary of Health, Education and Welfare (HEW), denying her claims for mother's and child's insurance benefits under Section 202 of the Act, 42 U.S.C. § 402. On March 10, 1976, the Appeals Council of HEW reversed the Administrative Law Judge and denied plaintiff's claim. Plaintiff seeks review.

Plaintiff alleges that her husband, Bruce Hidalgo, disappeared on March 17, 1967 when he left a family picnic in his employer's van to buy a pack of cigarettes. He called his employer several days later to tell a fellow employee that the van had broken down, and gave the location of the van. His co-worker found the van where Hidalgo said it would be and discovered that it was in perfect working order. Soon after he abandoned the van, the family car was missing from the garage. About three months later, the car was sold in Alabama with the bill of sale purportedly executed by Bruce Hidalgo, but his signature was never verified, and the bill of sale was never produced for the record.

Hidalgo had left home for a few weeks on two prior occasions, but had always kept in touch with his parents. On this occasion his parents had no contact with him although they had followed several leads after his disappearance, all without success. Hidalgo's mother indicated that she tried to locate him through the Sheriff's office and social security office, and that she had sent his picture to a business machine magazine to try to locate him, also without success. Citing the Louisiana presumption of death statute, a Louisiana state court rendered judgment on April 7, 1975 recognizing plaintiff as Hidalgo's surviving spouse in community, and his children as his "sole presumptive heirs".

In a case as this where plaintiff is trying to show her husband to be deceased, the social security regulations provide that a person who has been unexplainedly absent from his residence for seven years is presumed dead. The regulation, 20 C.F.R. § 404.705 provides:

"Whenever it is necessary to determine the death of an individual in order to determine the right of another to a monthly benefit or a lump-sum death payment under section 202 of the Social Security Act, and such individual has been *unexplainedly* absent from his residence and unheard of for a period of 7 years, the Administration, upon satisfactory establishment of such facts and in the absence of any evidence to the contrary, will presume that such individual has died." (Emphasis ours).

The only issue in this case is the determination of whether there is substantial evidence to support the decision of the Secretary. It is well settled that we do not try the case *de novo*, reweigh the evidence or substitute our judgment for that of the Secretary. *Goodman v. Richardson*, 448 F.2d 388 (5th Cir. 1970); *Knox v. Finch*, 427 F.2d 919 (5th Cir. 1971).

The crux of the Appeals Council's evidentiary ruling states:

"While it cannot be said with any certainty that the wage earner's disappearance

was precipitated by involvement with another woman, debt, marital difficulties or alcoholism, all of these problems were apparently present to some degree during the course of the marital relationship."

Based on this evidentiary finding and the evidence that Hidalgo's car had been sold in Alabama three months after his disappearance, the Council, citing *Dowell v. Gardner*, 386 F.2d 809 (6th Cir. 1967),[1] found that Hidalgo had purposely abandoned his family and that therefore his absence was not unexplained.

The finding is self-defeating. If there is no substantial evidence of facts indicating a purposeful abandonment, there is no basis for finding a purposeful abandonment; no basis for the finding that "all of these problems were apparently present to some degree during the course of the marital relationship". Let us examine the record on each of these factors.

The factor of "involvement with another woman" was apparently based on the following testimony given by Hidalgo's mother, Mrs. Iris Hidalgo:

"Q: You never had any knowledge of him being involved with any other woman since he was married to Bonnie?

A: No, sir. I had heard some rumors given to me, but nothing that I could substantiate.

Q: Was those rumors close to the point of time that he left?

A: No, it was much before that."

Only rumors are mentioned. There is no evidence of the truth of such rumors and if true, the involvement occurred "much before" the disappearance of Hidalgo. The lack of identification of the woman or any other evidence of her existence renders the rumor highly suspect. The remote date of the alleged involvement is substantial evidence that it had nothing to do with Hidalgo's disappearance.

Plaintiff testified that at the time of her husband's disappearance there was no unusual financial stress in the family since they were both working and that they had experienced no severe marital difficulties. Additionally, Hidalgo's mother testified that she was not aware of any marital

1. The Appeals Council relied on *Dowell v. Gardner*, 386 F.2d 809 (6th Cir. 1967). The *Dowell* case is discussed in *Blew v. Richardson*, 344 F.Supp. 183 (S.D.Ill.1972), in which Judge Robert D. Morgan discourses on the conflict between circuits on the interpretation of 20 C.F.R. § 404.705 and in which he held:

"At best, the uncontradicted evidence, as hereinabove summarized, indicates that there did exist a motive for Ballard's possible desertion of the family on November 5, 1958. There is no evidence of the continued life of Ballard after that date, unless the same evidence of disappearance, which raises the presumption of death, will support an overriding inference of continued life. In the view of this court, the regulation will not permit interpretation which produces such a paradoxical result.

There is simply no evidence in the record to rebut the presumption which would be necessary to sustain the Secretary's decision. Ballard's extended absence appears to be unexplained by any evidence, except that of possible motive for leaving which existed when he disappeared. This is neither the type of explanation contemplated by the regulation nor evidence contrary to the presumption it raises."

This decision was reversed, *Blew v. Richardson*, 484 F.2d 889 (7th Cir. 1973), on grounds that deliberate desertions frequently occur, the history of the seven year common law presumption, the conjunctive nature of the regulation requires "unexplainedly absent" and also "unheard of" for seven years and finally the respect due the Secretary's interpretation of his own regulation. Considering the fact that the Government in this day and time has available to it investigative and identification files and documentation on all individuals, we find the reversal more doctrinaire than convincing. The principal basis for the presumption is the extended absence which is far more difficult to explain than the absences encountered by English courts of men who had run off to sea in the 17th and 18th centuries. The common law comment becomes ridiculous when, as here, the state court has already rendered judgment that Hidalgo is dead under such a 7 year presumption. Under the decision of the Court of Appeals, a wage earner having motive for his departure could not be presumed dead, no matter how long he was absent. The motives for his initial departure might be relevant. They should not be conclusive. We find judge Morgan's holding more reasonable and more consistent with the benevolent purposes of the regulation.

tensions between her son and his wife. She further testified that plaintiff and her husband had moved in with her for a period of almost two years and she felt there was nothing wrong or unusual about her son's marriage. The record is bare of any substantial evidence contrary to this testimony.

The only evidence of Hidalgo's alleged alcoholism is the statement of Harold Le-Boucf, Hidalgo's employer for a period of 3 to 6 months prior to his disappearance, indicating that he would miss a few days of work occasionally because of drinking, but that overall he was a good employee and not in danger of losing his job. In addition, there is no evidence that Hidalgo took the car from his family home two days after his disappearance or that he sold it three months later in Alabama. So far as the record is concerned, the car could have been stolen by another and sold by the same person. If, however, it was actually taken by Hidalgo and sold by another, it would indicate possible foul play.

We find, as did the Council itself, that there was no substantial evidence to support its finding that Hidalgo had not "been unexplainedly absent from his residence and unheard of for a period of seven years".

Looking at the record as a whole, we are convinced that the plaintiff has met her burden of proof and that Bruce Hidalgo, her husband, should be presumed dead. The motion by plaintiff for summary judgment is GRANTED; and the motion by defendant for summary judgment is DENIED. Plaintiff should submit an appropriate judgment for execution.