Helen TRIMPIN for Elizabeth, Shirley
and Bobby Givens, Plaintiff,

v.

Robert H. FINCH, Secretary, Health,
Education & Welfare, Defendant.

Civ. A. No. 68-C-113-A.

United States District Court
W. D. Virginia,
Abingdon Division.

May 23, 1969.

R. C. Shannon, Shannon & Newman,
Appalachia, Va., for plaintiff.

William C. Breckinridge, Asst. U. S.
Atty., Roanoke, Va., for defendant.

OPINION and JUDGMENT

DALTON, Chief Judge.

This is an action pursuant to section
205(g) of the Social Security Act, 42
U.S.C.A. § 405(g), to review the final
decision of the Secretary of Health, Edu-
cation and Welfare which holds that
Elizabeth, Shirley and Bobby Givens
are not entitled to child's insurance ben-
efits based upon an application filed
on their behalf by Helen Trimpin, their
mother, on October 31, 1966. The deci-
sion, rendered by a hearing examiner on
September 17, 1968, became "final"
when the Appeals Council denied the
plaintiff's request for review on October
31, 1968.

The issue presented is whether the
finding of the Secretary, that the chil-
drens' father cannot be presumed to be
deceased, is based upon the substantial
evidence required by 42 U.S.C.A. § 405
(g) to render that finding conclusive.

The question presented involves the
Social Security Administration Regu-
lation No. 4, section 404.705, 20 C.F.R.
§ 404.705, which provides:

Whenever it is necessary to deter-
mine the death of an individual in
order to determine the right of an-
other to a monthly benefit * * *
under section 202 of the act, and such
individual has been unexplainedly ab-
sent from his residence and unheard
of for a period of seven years, the Ad-
ministration, upon satisfactory estab-
lishment of such facts and in the ab-
sence of any evidence to the contrary,

will presume that such individual has died.

If the children's father "has been unexplainedly absent from his residence and unheard of for a period of seven years", then he will be presumed to be dead and the children will be entitled to child's insurance benefits under section 202(d) (1) of the Social Security Act as amended, 42 U.S.C.A. § 402(d) (1).

The record reveals the following. In 1944 Helen Trimpin married Charles E. Givens, a coal miner. Three children were born of this marriage, Elizabeth on August 25, 1946, Shirley on December 26, 1948 and Bobby on May 4, 1951. Charles left the coal mines to work as a manual laborer with a contracting firm. According to Helen, Charles had no education and could neither read nor write. Early in the marriage Helen testified "We separated three times and that was over nothing." In 1952, Helen had Charles arrested for nonsupport "because he gambled his money away" and he was sentenced to serve a year in the County "Workhouse". Helen testified that she and Charles were planning to live together when he was discharged from the "workhouse", but that upon discharge Charles asked to go to Indiana to hunt work because of the low paying jobs located in the local Appalachia area.

In August, 1953, Charles left Inman, Virginia bound for Gas City, Indiana. He had a suitcase of clothes and enough money for bus fare. This was the last that Helen ever saw Charles. In Indiana, Charles worked for the Essex Wire Corporation located in Marion, Indiana. Helen testified that she received two letters from Charles, both containing money, the last one being received in September, 1954 and containing thirty or forty dollars. This was the last that she ever heard from Charles although the last letter said "I'm coming after you in three weeks."

While in Indiana, Charles resided with his brother-in-law, Arthur Diets, who also worked for the Essex Wire Corporation. In a contact report, Mrs. Mary Diets, wife of Arthur, said she last saw Charles in Celina, Ohio in 1954. Mary had no idea where Charles had gone but she opined that Charles would have left no forwarding address at the Essex Wire Corporation because he owed them money. She checked with the personnel department at Essex and learned that the last date that Charles worked for the Company was November 19, 1953. There is a statement in the record, apparently taken from Arthur Diets, to the effect that he was told that Charles was going to Chicago to find work.

Helen testified that she and the children, after failing to hear from Charles, went to Indiana and spent three months searching for her husband. The search took place in Celina, Ohio and Dayton, Ohio, but with no results. Helen testified that "everybody we'd meet they'd say, I saw him but he's gone." Helen testified that Charles was reported to have joined a "gang" and was killed by them. She had also heard that Charles had been drowned in the Ohio River.

The Administration records show postings to the wage earner's records through the first three quarters of 1954, with no postings thereafter.

On May 23, 1959, Helen married Joseph H. Trimpin at Gate City, Virginia. After the marriage Helen and Joseph, along with the three children, moved to New York City. After eight months Helen and her children returned to Virginia because of marital difficulties between Helen and Joseph. Helen testified that Joseph told her that he has secured a divorce and remarried, although she has "never received any papers." A son, David Trimpin, was born on July 28, 1960, of this marriage, a time after the couple had separated.

According to a statement signed by Helen, relating to the search for Charles, "I didn't actually contact the police until after I came back to [Virginia] from [New York] in 1960." Helen stated that she contacted the police authorities in Marion, Indiana, Indianapolis, Indiana and Celina, Ohio. The authorities wrote

to Helen informing her that they did not have any records pertaining to Charles Givens' alleged death.

A contact report with the sheriff's office in Grant County, Indiana, dated March 30, 1967, states that there are no records on file pertaining to a person named Charles Givens. The records prior to 1962 can only be released by court order.

A contact report with the Detective Bureau of the Marion, Indiana Police Department reveals that their records indicate that a person named Charles Givens, age 23, with an Appalachia, Virginia address and with physical characteristics similar to the missing person, was arrested on January 30, 1954 for intoxication, fined and released. There is no positive identification but the year of birth is the same as that of Charles E. Givens as reported in the records.

A search of the records of the Indianapolis, Indiana Police Department revealed no evidence on Charles E. Givens, but two records were included in the record that could possibly be related. The first was a record that showed that a "Clarence E. Givens" on July 21, 1959, became involved in an argument in a bar, was injured and treated at a hospital. The second report concerns a "Charles C. Givens", a diabetic, who was found in an unconscious condition, taken to a hospital, given a shot and apparently released. The latter report is dated November 6, 1956.

A contact report, dated April 18, 1967, with the police authorities in Celina, Ohio states that no record was found pertaining to Charles E. Givens.

There are also contact reports with a Millard Ball, a deputy sheriff in Grant County, Indiana, with the Grant County Health Department and with the Indiana State Bureau of Vital Statistics, Indianapolis, Indiana. These reports indicate no records or recollection of a person named Charles E. Givens. No record of death could be located. The persons in the Grant County departments have occupied their positions for a consider-

able length of time and could not personally of their own knowledge remember any Charles E. Givens nor did they remember the alleged gang that Charles had allegedly joined nor anyone named "Pinto," apparently an alleged alias used by Charles.

According to a statement by Helen Trimpin, she had Charles' disappearance announced over a radio station in Cincinnati, Ohio and also a notice placed in the Inquirer, a New York newspaper. This occurred before Helen's second marriage, but apparently without results.

A contact report with the Wise County Department of Welfare shows that Helen applied for benefits under the Aid to Families of Dependent Children welfare program in 1958. The Wise County Department contacted the Bureau of Vital Statistics in Indianapolis, and received an answer to the effect that there was no record of death of a Charles E. Givens. Under the Aid to Dependent Children program, the father does not have to be dead in order for the children to qualify for benefits. Helen testified that she receives $98 a month from the Welfare Department.

A contact report with Mrs. Donald Givens, sister-in-law of Charles, states simply that Charles has been missing for 12 or 13 years. Mrs. Donald Givens further stated that she had never heard any of her brothers-in-law say they saw Charles killed, a statement that Helen had made on the missing person's form accompanying the initial application.

A contact report with the Department of Public Welfare in Bay Shore, New York adds nothing relevant to the record.

The record also contains two statements regarding the presumed death of an individual by reason of his continued and unexplained absence. The first is by Helen and accompanied the application while the second was made by Charles' mother. While Charles' mother described Charles as a good worker and well liked in the community, Helen described him as a "drinker and gambler [and] cheater." Both statements note

that Charles owned no property and had no bank account. Both statements expressed the belief that Charles was dead or else there would have been some contact.

The record also includes a letter dated August 18, 1966 written by Bobby Givens asking aid in locating his father from the Department of Health, Education and Welfare. There is also a notice that was placed in a newspaper by Shirley Ann Givens in 1965 asking that her father contact his family. Neither the name or the location of the newspaper was given.

In Secretary of Health, Education and Welfare v. Meza, 368 F.2d 389, 392 (9th Cir. 1966), it was held that when the facts show that a person has been absent from his residence and unheard of for a period of seven years that a presumption arises that the person is dead. The burden of explanation then shifts to the Secretary, and the presumption can be dissipated "by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life." It is obvious from the record that Charles E. Givens had been absent for over seven years and thus the claimant has the benefit of the presumption of death. The question is whether the Secretary has successfully dissipated this presumption. As explanatory of Charles' disappearance the hearing examiner, in his decision stated:

> The main tenor of the evidence is to the effect that the wage earner, after having served time in jail as a result of a complaint made by claimant for his failure to support his family, desired to rid himself of his family, and took the opportunity of seeking a job in Indiana in order to effectuate his plan. The fact that no earnings have been posted to the wage earner's Social Security account since the third quarter of 1954 is not necessarily indicative of the death of the wage earner.

We would agree with the hearing examiner's decision and his inferences except for the limited amount of information on which that decision is based. The government argues that the facts in the present case parallel the factual situation in Dowell v. Gardner, 386 F.2d 809 (6th Cir. 1967) and that the *Dowell* decision, which held that a seven year absence was explained, should be controlling in our decision. In the *Dowell* case, the facts reveal that Dowell "had a previous history of family desertion and unexplained absences." The circumstances surrounding Dowell's disappearance reveal that Dowell had been served process in a divorce proceeding only a few weeks before his disappearance. He had previously been arrested for assault and battery and had ceased to contribute to the support of his family. After service in the divorce proceedings, Dowell had burned the family's house trailer containing all the family's food and clothing. Dowell had been held in contempt of court for nonsupport and served ten days. Upon release Dowell fled and was not heard of again. A new warrant charging nonsupport had been issued after Dowell was released. The Divorce Court had ordered Dowell to pay fifty dollars a week for the support of his children. In holding that the absence was explained, the court stated:

> The Secretary ruled that Dowell's absence is not unexplained; that he had a number of reasons for absenting himself for the extensive period involved; that should his whereabouts become known, he would be faced with the problem of support of his children *as well as other problems apparent from the facts of this case;* and that since his absence is not unexplained, his death cannot be presumed for the purpose of paying survivors' benefits to his children. (Emphasis added)

> \*   \*   \*   \*   \*   \*

Congress has not provided for benefits to children of an insured parent who has *deserted* them but only for children of an insured parent who is *dead.* Dowell v. Gardner, supra at 810.

It is true that in the present case that Charles E. Givens had served time in jail as a result of a complaint by his wife. However upon being released Charles did not simply flee or disappear, but rather, with the consent of his wife, traveled to Indiana to find work. Charles' bus fare was paid by his wife and some relatives. Upon arriving in Indiana, Charles lived with relatives and worked at a manufacturing company. Although the correspondence is not extensive, the evidence would tend to show that Charles thought of his family and indeed sent them money. As Helen testified the last letter from Charles indicated that he intended to have his family join him. The last letter was sent in September, 1954. We think these facts are sufficient to distinguish the present case from the *Dowell* case. In fact the only evidence of record that significantly parallels the *Dowell* case is that both of the absent spouses had served time for nonsupport. In the *Dowell* case, the husband fled not just to escape supporting his family, but also to escape the consequences of "other problems apparent from the facts of [that] case." Dowell also had a history of "family desertion and unexplained absences." In the present case Helen testified that she and Charles had separated three times early in their marriage before any of the children were born but there is no evidence of subsequent separations. Apparently the couple lived a relatively normal married life until 1953 when Charles served time for nonsupport. After serving his time, Charles and Helen apparently still possessed a relatively normal marriage. Charles, with the consent of Helen, left to find work. He found work, corresponded and subsequently disappeared. A relatively limited search by Helen was unsuccessful in locating Charles. Charles has been absent for over fourteen years.

Although the Secretary has investigated the present case, it would seem that this investigation, together with the other evidence of record, is at best incomplete. The search has been confined mostly to the State of Indiana and several cities and counties within the state. We believe that the Secretary must, in fairness to the children on whose behalf this application is made, conduct a more thorough investigation before justification exists to deny benefits to these children. Possibilities which are apparent from the facts of this case would be a search of the records in the Bureau of Vital Statistics in Illinois (Charles' brother-in-law stated that he heard Charles was going to Chicago to find work) and in Ohio (Charles had been seen in Celina, Ohio). It may also prove fruitful to utilize the vast record keeping services of the Federal Bureau of Investigation to check any criminal records or fingerprint identification that would pertain to the whereabouts of Charles E. Givens. The foregoing is only meant to be suggestive of possible avenues to explore and is not meant to be interpreted either as mandatory or as a restricted list should the facts of this particular case, when further developed, warrant investigation of a different type and place.

Thus we think that this case should be remanded to the Secretary for further investigation concerning the whereabouts of Charles E. Givens and for the introduction into the record of evidence of a nature to show that a complete investigation has been conducted. Because the burden is upon the Secretary to rebut the presumption of death from a seven year unexplained absence, the evidence should be the best available after a thorough investigation. The family of the missing person should also be allowed to present any additional evidence that would possibly shed light on the case.

For the foregoing reasons it is ordered that the finding and the conclusion of the Secretary of Health, Education and Welfare that this is no presumption of the death of Charles E. Givens, because his absence is not unexplained within the meaning of 20 C.F.R. § 404.-705, are hereby vacated and set aside; and the case is remanded to the Secretary for further proceedings not incon-

sistent with this opinion and any other proceedings which may be deemed proper and necessary.

Accordingly, the defendant's motion for summary judgment is denied.