Gloria MANDO, for herself and on behalf of her daughter, Elissa Mando, and her son, Michael Mando, Plaintiff-Appellant,

v.

SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.

No. 1036, Docket 84–6006.

United States Court of Appeals, Second Circuit.

Argued April 5, 1984.

Decided June 19, 1984.

Oakes, Circuit Judge, concurred in part, dissented in part, and filed opinion.

Shawn P. Leary, New York City (The Legal Aid Society, Kalman Finkel, Attorney-in-Charge, Civ. Div., Morton B. Dicker, Attorney-in-Charge, Litigation, Marshall Green, Director of Litigation, New York City, of counsel), for plaintiff-appellant.

Janice Siegel, Asst. U.S. Atty., E.D.N.Y., Brooklyn, N.Y. (Raymond J. Dearie, U.S. Atty., E.D.N.Y., Patrick B. Northup, Asst. U.S. Atty., Brooklyn, N.Y., of counsel), for defendant-appellee.

Before FEINBERG, Chief Judge, OAKES, Circuit Judge and POLLACK, District Judge.*

FEINBERG, Chief Judge:

Gloria Mando appeals from the judgment of the United States District Court for the Eastern District of New York, I. Leo Glasser, J., affirming the determination of the Secretary of Health and Human Services that appellant and her two children were not entitled to Social Security survivors insurance benefits. The district court held that, although appellant's husband had been absent and not heard from for at least seven years, his death would not be presumed under the applicable regulation because the record supplied a sufficient reason other than death to explain his absence. Appellant argues that the existence of a reasonable explanation other than death for her husband's absence does not prevent the presumption from arising and that the Secretary did not introduce sufficient evidence to rebut the presumption.

For reasons given below, we reverse and remand.

### I.

Appellant applied for survivors insurance benefits on behalf of herself and her children in April 1980. Since she did not have direct proof of her husband's death, she sought to rely on the presumption of death provided by 20 C.F.R. § 404.721(b). That regulation provides:

> If you cannot prove the person is dead but evidence of death is needed, we will presume he or she died at a certain time if you give us the following evidence:
>
> .  .  .  .  .
>
> (b) Signed statements by those in a position to know and other records which show that the person has been absent from his or her residence for no apparent reason, and has not been heard from, for at least 7 years. If there is no evidence available that he or she is still alive, we will use as the person's date of death

either the date he or she left home, the date ending the 7 year period, or some other date depending upon what the evidence shows is the most likely date of death.

Appellant claimed that her husband disappeared on October 13, 1972, and has not been heard from since.

After appellant's application was denied initially and on reconsideration, she received a hearing before the administrative law judge (ALJ). At that time, she introduced documentary and testimonial evidence as follows: She and her husband were married in 1969. He had held a succession of low paying jobs, yet had been able to support his family comfortably and to buy his wife "[e]xpensive jewelry and . . . nice clothes." Appellant expressed her belief that her husband was involved in "some other type of business that he never told me about" because he spent much more than the income from his low-paying jobs. He would go back to his old neighborhood, East New York, daily to see friends and to attend to "business", which he refused to discuss with her because he did not want "anybody to mess with me" if anything went wrong. He introduced her to some of the people he associated with, who dressed expensively and appeared to her to be "gangster types of people" involved in "some kind of racket."

When her husband left home for the last time on the morning of October 13, 1972, appellant was seven months pregnant with the couple's second child. Her husband told her he had to see someone to take care of some business and departed with nothing other than the clothes he was wearing. He was last seen when he borrowed his brother-in-law's car, which was later found abandoned at LaGuardia Airport. He telephoned that evening and told appellant he would be home in about an hour. He also asked her what she was doing, and as she described the conversation, "I told him I was painting the ceiling in the bathroom

---

* Honorable Milton Pollack, Senior United States District Judge for the Southern District of New York, sitting by designation.

and he says to get off the ladder ... I might fall, I was pregnant and he didn't want to chance that." There was uncontested evidence that her husband loved her and their daughter, was a good family man and was looking forward to the arrival of their second child, who he hoped would be a boy.

Though somewhat alarmed, appellant did not immediately report her husband missing because occasionally in the past he had unexpectedly left for a day or two, sometimes with the explanation that he was going to a card game. Two days later, appellant's sister-in-law filed a missing person report with the police. Appellant submitted documents indicating that "[a]ll efforts" by the Missing Persons Bureau of the New York City Police Department had produced no result, that the case was still active, that her husband was not an inmate in a New York State correctional institution and that no earnings had been posted to his Social Security record after 1967, five years prior to his disappearance. In May 1980, appellant made a search of death records, which produced no results. She also provided statements from her husband's mother, brother, sister, father-in-law and landlord in which each affirmed that he or she had not seen, heard from or heard about her husband since his disappearance and did not know of his whereabouts. For example, his brother stated that "[t]he circumstances [of] his disappearance seem questionable to me, but I'm certain that I would have heard or seen him." His brother also stated that "[h]e knew people I would not associate with."

Appellant expressed her assumption that her husband had been involved with organized crime and suggested the possibility that he had been killed. In a written statement, appellant said that on the same day that her husband was reported missing to the police, she went to the neighborhood in East New York frequented by her husband to search for him and questioned people who knew the two of them. In her words, "They acted as if they didn't know my husband [and] me. I persisted in my questioning—telling them I had been out to dinner [with] them. They finally admitted they knew us. They said they didn't know where he was. The last they saw of him was on 10/13/72 [and] he had told them he had to go meet someone."

Appellant also testified, however, that before his disappearance her husband had pled guilty to a gun possession charge, that he was on parole at the time and that he had said "he might go away for a long time" but did not tell her any other details of the imminent sentencing. He failed to appear for his sentencing hearing on October 20, one week after his disappearance, and was declared a fugitive. Appellant's counsel theorized to the ALJ that her husband had been killed by the Mafia so that he would not "talk" to the authorities. The ALJ rejected this as "interesting and imaginative [but] in my opinion ... not plausible." He held that appellant's husband was a fugitive and thus his absence "can be reasonably explained without inferring his death, ... notwithstanding its duration." The presumption of death under the regulation, therefore, did not arise because the absence was "not unexplained or the result of no apparent reason."

The ALJ stated in his decision that he had carefully considered all of the testimony, documents and arguments presented, but he did not discuss the evidence in any detail. On this appeal, the Secretary has marshalled the evidence supporting a finding that the absence of appellant's husband is explained by his being a fugitive as follows: There were important facts that he did not reveal to his wife, including his having been in prison, the nature of his "business" activities and the source of his money. He was about to be sentenced on a felony charge for which he expected to receive a long prison term. Appellant testified that the call she received on the night he disappeared "in itself was odd since he never called me" and that he had worn jeans that day when he would normally be dressed up. Appellant also stated in one of her written submissions that her husband told her "that he wouldn't tell me anything just in case the police came around." He

had a tendency to engage in secretive ways and to lead a double life. The car he borrowed was found at the airport, where people literally take flight.

The ALJ held that the presumption did not arise because "logical reasons exist to explain [Mr. Mando's] absence other tha[n] death." This decision became the final decision of the Secretary when the Appeals Council denied appellant's request for review on the same basis. In doing so, the Council stated that the Social Security Administration "does not acquiesce" in *Johnson v. Califano,* 607 F.2d 1178, 1182 (6th Cir.1979), a decision relied on by appellant's attorney, under which appellant would have been entitled to the presumption of death despite the existence of a possible explanation, and the burden of rebutting the presumption would be on the Secretary. As noted earlier, the district court affirmed on the same ground. It also stated in dictum that "a rational explanation that the wage earner was attempting to avoid court process can rebut the presumption of death," but it held that the presumption was "inapplicable."

## II.

■ The arguments on appeal have focused on the proper standards for raising and rebutting the presumption of death under 20 C.F.R. § 404.721(b). The Secretary concedes in her brief to us that five circuit courts have interpreted § 404.721(b) as not requiring a claimant to prove that no explanation exists for a seven-year absence, but placing the burden on the Secretary to rebut the presumption.[1] Under these decisions, to raise the presumption a claimant apparently need show only that the wage earner has been absent and unheard of for at least seven years. See *Shelnutt v. Heckler,* 723 F.2d 1131, 1133 (3d Cir.1983). The Secretary argues, how-

ever, that these decisions are incorrect and that under the regulation the claimant must also show that there is "no apparent reason" for the absence. The Secretary cites *Blew v. Richardson,* 484 F.2d 889 (7th Cir.1973), written by then Judge Stevens, and the Secretary's long-standing administrative interpretation of the regulation as authority for her position. The Secretary and appellant also disagree over the standard for rebutting the presumption, if it is raised. On the view we take of this case, however, we find it unnecessary to resolve for this circuit either the standard for raising or for rebutting the presumption.

Assuming arguendo that the standards urged by appellant are correct and thus that she has made an adequate showing to raise the presumption of death, we conclude that the Secretary has offered sufficient evidence to rebut the presumption under the rebuttal standard articulated in *Secretary of Health, Education and Welfare v. Meza,* 368 F.2d 389 (9th Cir.1966), which is urged by appellant: "proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life." Id. at 392. A rational explanation for the disappearance and absence of appellant's husband other than death is that he fled to avoid a lengthy prison sentence on the gun possession charge. In addition to his motive to flee, there was other circumstantial evidence of flight, including his unusual dress and phone call on the day of disappearance and the discovery of the borrowed car at the airport. With this evidence, the Secretary met the burden of going forward and thus rebutted the presumption. See *Johnson v. Califano,* supra, 607 F.2d at 1181–83; *Sinatra v. Heckler,* 566 F.Supp. 1354, 1358–60 (E.D.N.Y.1983) (Weinstein, Ch.J.).[2]

---

1. See *Autrey v. Harris,* 639 F.2d 1233 (5th Cir. 1981); *Edwards v. Califano,* 619 F.2d 865 (10th Cir.1980); *Johnson v. Califano,* 607 F.2d 1178 (6th Cir.1979); *Aubrey v. Richardson,* 462 F.2d 782 (3d Cir.1972); and *Secretary of Health, Education and Welfare v. Meza,* 368 F.2d 389 (9th Cir.1966). See also, *Shelnutt v. Heckler,* 723 F.2d 1131 (3d Cir.1983) (applying *Aubrey* analysis).

2. The Secretary has introduced evidence supporting flight rather than death that goes well beyond mere speculation. On this record, we do not need to decide the threshold showing that would be sufficient to meet the burden of going forward to rebut the presumption. Some of the cases appear to set this rebuttal threshold fairly high, almost to the point of placing, in

The ALJ and the district court erred, however, in apparently assuming that the case was over once the presumption of 20 C.F.R. § 404.721(b) was held to be inoperative. We believe that the consequence of rebutting the presumption here—or failing to successfully invoke it in the first instance—is simply that it is not in the case. See *Sinatra v. Heckler*, supra, at 1360 (remand for finding on fact at issue after presumption rebutted); 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 300[01], at 300–4 (1982). This leaves appellant with the burden of proving death. Cf. *Eisenhauer v. Mathews*, 535 F.2d 681, 687 (2d Cir.1976). In the more usual case where a claimant seeks to invoke the presumption of death, the claimant has no evidence other than the fact that the wage earner unexpectedly disappeared and has not been heard from for over seven years, let alone affirmative evidence of death. E.g., *Autrey v. Harris*, 639 F.2d 1233 (5th Cir.1981). Indeed, often the only other evidence tends to suggest flight rather than death. *Shelnutt v. Heckler*, supra. The claimant can only speculate as to how the wage earner might have met an untimely end. E.g., id. The presumption embodies various considerations of policy, fairness and probability, 1 Weinstein's Evidence, supra, ¶¶ 300[01]–301[03]; see Allen, Presumptions in Civil Actions Reconsidered, 66 Iowa L.Rev. 843, 847 (1981),[3] and responds to the more usual situations, where evidence one way or the other is essentially lacking and the decision turns on how the presumption allocates various burdens of proof.

That is not the situation here. In addition to showing that her husband has been absent for at least seven years without having been heard of, appellant has introduced substantial circumstantial evidence in support of her theory that her husband may have been "rubbed out" by his underworld acquaintances. With the presumption out of the case, the ALJ as factfinder should have weighed the evidence and decided between the competing explanations for the absence of appellant's husband, specifically whether appellant had shown that it was more probable than not that her husband was killed by his "business" contacts. In doing so, the ALJ should consider the lengthy absence and the other evidence offered by appellant in support of the probability of "death in the light of all the known facts." See *Gardner v. Wilcox*, 370 F.2d 492, 494–95 (9th Cir.1966). Were we the finders of fact, we would be inclined on this record to find that appellant's husband was killed, but this is the province of the ALJ. We, therefore, remand for the ALJ to perform the factfinding function.

On remand, the ALJ should discuss the evidence and indicate in his decision the basis for reaching his factual conclusion, including an assessment of the credibility of any witnesses. In this regard, the ALJ's decision was too sketchy. We also note that the record does not indicate exactly what the charge was on which appellant's husband faced sentence, after a guilty plea, or what the possible sentence was. It would also be useful to know whether there had been any offer or discussion of cooperation in return for a reduced sentence. Accordingly, the remand is also for the purpose of taking additional evidence.

The judgment of the district court is reversed and the case remanded to the district court with a direction that it be

effect, a burden of persuasion on the Secretary. E.g., *Shelnutt v. Heckler*, supra. See 1 J. Weinstein & M. Berger, Weinstein's Evidence ¶ 300[02] at 300–9 to 300–10 (1982); cf. *Johnson v. Califano*, supra, at 1183–84.

**3.** After seven years of unbroken absence and silence, the legal system will proceed as if the person were dead. The policy behind the rule is that it is unfair to require that the affairs of other persons affected by those of the missing person be held in abeyance indeterminately, especially when there is a good chance that the missing person is in fact dead.
66 Iowa L.Rev. at 847 (footnote omitted).

remanded to the Secretary for further proceedings consistent with this opinion.

OAKES, Circuit Judge (concurring in part and dissenting in part):

I would follow the cases, note 1 majority opinion, which place the burden on the Secretary to rebut the presumption of death arising on a showing of seven years' unexplained absence. Then I would say that the Secretary failed to produce sufficient evidence "to explain the anomaly of the disappearance," especially given that at the time of the hearing almost nine (now almost twelve) years had elapsed since Mr. Mando vanished. The man did not take a suitcase with him. Concerned lest his pregnant wife fall off a ladder, he never approached anyone to inquire about her or the children. And when she went to his haunts in East New York their old "friends" pretended not to know her or to have known him. By far the most likely scenario is that he was thought by his gangster friends to be cooperating with the "law," in view of his upcoming sentencing, and he was therefore "rubbed out."

I do not know what a remand will accomplish other than to prolong this already rather ancient case. I would, therefore, simply reverse.