**Jeanette BROWN, Appellant,**

v.

**Margaret M. HECKLER, Secretary of Health and Human Services.**

**No. 83–1083.**

United States Court of Appeals, Third Circuit.

Argued Sept. 12, 1983.

Decided Dec. 28, 1983.

Alan M. Kraut (argued), Kraut & Kraut, West Chester, Pa., for appellant.

Diane C. Moskal, Regional Atty., Charlotte Hardnett (argued), Asst. Regional Atty., Region III, Department of Health and Human Services, Philadelphia, Pa., Peter F. Vaira, U.S. Atty., Serena H. Dobson, Asst. U.S. Atty., Philadelphia, Pa., for appellee.

Before WEIS, HIGGINBOTHAM and SLOVITER, Circuit Judges.

**OPINION OF THE COURT**

SLOVITER, Circuit Judge.

Appellant Jeanette Brown applied for widow's insurance benefits under Section

202(e) of the Social Security Act, 42 U.S.C. § 402(e), claiming that her husband, David Brown, whom she married in 1949, had been missing since 1972 and must be presumed dead. The Department of Health and Human Services (HHS) denied the application, and the district court upheld that decision. We affirm.

David Brown had been a merchant seaman for more than 20 years. In 1966 he lost his job. It is undisputed that when Brown was home, he did not get along with his family. Jeanette Brown last saw her husband in February 1972; at that time he was quite distraught and told her he was going to Arizona. In May 1972 he sent her a letter that said, in relevant part,

> Just a few lines to tell you good bye, I'm leaving the Country.... I just wasn't meant to be a father and husband.... [F]rom now on forget me as I'll never be back or write again—I've changed my name and all my documents so it will be impossible to find me. I think it best for all of you. This way you will know I will not be droping [sic] in on you unexpectedly. You can now settle down and make a new life for yourself.... [D]on't look for word of me as I'm not going to keep you waiting any longer.[1]

Jeanette Brown never heard from her husband again. Several relatives and friends said in statements that they had seen Brown in California and Arizona after his departure from home. There are some inconsistencies in the dates, and several of the statements were later amended. It is clear from the record, however, that no family members or friends saw him after the mid-1970's. He apparently disclosed no plans or destination.

It is also clear that Brown was a "loner," subject to depression, and given to disappearing for long stretches. In her application Jeanette Brown said, "[H]e was a loner and he liked to get away by himself for 2–3 months at a time." Asked whether he generally kept other people informed of his whereabouts, she replied that "he didn't tell anybody." David Brown's brother and a

---

1. The full text of the letter is as follows:

May 29, 1972

My Dear Wife!

Just a few lines to tell you good bye, I'm leaving the Country. I'm sailing away on a ship for the far east—I just want to tell you I have no hard feelings about you—only good thoughts. You are a wonderful wife and mother—I know its all my fault. I just wasn't meant to be a father and husband. I'm so sorry I ruined your life—I hope the Lord can see to forgive me, I've asked him so many times. Please forgive me for all the bad things I've said—You know I didn't mean them. When I'm angry I say things I don't mean, I guess the children will never forgive me, they never write so I surmise it. Maybe when they are grown they will—I love them so very much and you know I will always love you to [sic] and always have. But from now on forget me as I'll never be back or write again—I've changed my name and all my documents so it will be impossible to find me. I think it best for all of you. This way you will know I will not be droping [sic] in on you unexpectedly. You can now settle down and make a new life for yourself. You are still good looking and young enough to live a little. I want you to have a little fun. I did a poor job of making you happy, but I guess I couldn't help it—I tried but failed somewhere. Please forgive me. Keep your little chin up, keep up your morale, you have five wonderful children who all love you, thats [sic] means so much and you have two lovely grandchildren and many more to come. I'll close my Dear, please don't have any bad feelings about me and don't look for word of me as I'm not going to keep you waiting any longer. Good luck and worlds of love to a good wife and mother.
Bye Jeanette
As always

Love Dave

Sorry I gave what money I had left to the kids as "I'm now broke."

*Note*

Never tell the MEBA I've sailed away on a ship as they will stop your pension. I'm not working on one anyway and can't as I have no passport or papers—I've sent them all to you.

[Indecipherable comment, possibly not Brown's.]

*Note!* Jeanette!

I called Tom, he says he has a letter to mail you so I guess you will be hearing from him. He seems happy & says everything is ok. I sent all the children 200 dollars I only have this one hundred left, don't feel bad. I'd send you more but I don't have it. Money is not important anyway. I feel better when I don't have any. Good luck in your new life. I think you are a wonderful person—Bye forever.

Dave

longtime friend made similar statements. Nevertheless, several relatives and friends concluded by 1979 that he had committed suicide.

In 1979 Jeanette Brown applied for widow's benefits; following denial of her initial application, she made a second application, this time presenting a decree of presumptive death issued by the Court of Common Pleas of Chester County, Pennsylvania. This application was denied also, initially and on reconsideration, then by an Administrative Law Judge, and finally by the Appeals Council. The district court, in reviewing the decision, granted summary judgment for the Secretary.

■ We have reviewed the applicable law governing the presumption of death in Social Security claims in *Shelnutt v. Heckler*, 723 F.2d 1131 (3d Cir.1983), decided today. Under the applicable regulation an absence of seven years "for no apparent reason" gives rise to a presumption of death. 20 C.F.R. § 404.721(b). The Secretary can rebut that presumption with direct evidence that the wage earner was alive after his disappearance or by clear evidence of a motive for desertion. *See, e.g., Blew v. Richardson*, 484 F.2d 889, 892–93 (7th Cir.1973). As we held in *Shelnutt*, evidence consisting of facts that rationally explain the wage earner's disappearance in a manner consistent with continued life will adequately rebut the presumption.

In denying the claim in this case, the Department and the ALJ concluded that the presumption of death did not arise.[2] The district court upheld that conclusion but also found evidence sufficient to rebut a presumption of death. At the oral argument before us, the Secretary conceded that Brown's absence triggered the presumption of death, but argued that it was adequately rebutted. In light of this concession, we do not decide whether this is an appropriate case to uphold the administrative decision on the basis that the presumption did not arise, and instead we consider only whether the Secretary adequately rebutted that presumption.[3]

■ The facts in this case are, in principal, the converse of those before us in *Shelnutt*. In *Shelnutt*, there was inadequate evidence of an intention by the wage earner to leave permanently, and the proffered motive to do so was only speculative. Therefore, in *Shelnutt* we held that the Secretary failed to rebut the presumption of death because she did not present sufficient affirmative evidence of flight. Here we find that sufficient evidence has been adduced.

Brown's letter to his wife is as unequivocal a statement of desertion as can be imagined. It provides a motive for leaving, "I did a poor job of making you happy" and "You can now settle down and make a new life for yourself. You are still good looking and young enough to live a little. I want you to have a little fun." It provides a modus vivendi: "I'm leaving the country, I'm sailing away in a ship for the far east." It provides a modus operandi for remaining undetected: "I've changed my name and all my documents." Brown's ability to stay away undetected is confirmed by his earlier disappearances, as his wife stated that he generally did not tell people of his whereabouts and his brother stated that he had

---

**2.** The ALJ stated that "the evidence of record and the testimony at the hearing does not conclusively reflect that the wage earner is, in fact, deceased." This imposes too rigorous a burden on a claimant. A presumption of death has been provided precisely because the Secretary recognized that there are instances when the claimant cannot "conclusively" show the wage earner is deceased. However, it appears from the discussion in the ALJ's opinion that the ALJ also concluded that Brown's absence was not unexplained.

**3.** There is some suggestion in the ALJ's opinion that he credited evidence of sightings of Brown in 1973 and 1974. The opinion is vague as to whether the findings and rejection of the claim relied in part on the absence of a passage of seven years since Brown's disappearance. If this issue were necessary to our disposition, we would remand with instructions that the ALJ give the claimant the opportunity to clarify the record in this regard. However, in light of our disposition, we will accept the facts as presented by the appellant and assume that Brown was absent for seven years by the time his wife filed her application.

# 1138

disappeared before "for 4–5 years at a time."

Brown's mother stated Brown was a man of his word and she did not expect to hear from him again. His wife stated that she did not look for him at any point after his departure. Although desertion does not preclude a finding that the wage earner has since died, *Aubrey v. Richardson,* 462 F.2d 782 (3d Cir.1972), evidence of desertion may satisfy the Secretary's burden of rebutting the presumption of death, since it rationally explains the disappearance in a manner consistent with continued life. Appellant suggests that Brown, who was depressed, committed suicide, but the letter does not support such conjecture, and no other evidence was produced by appellant to show suicide.

This case parallels *Miller v. Richardson,* 457 F.2d 378 (3d Cir.1972), in which the claimant's husband had called several days after leaving home to say that he intended to begin a new life in California. Upon that evidence, we upheld the grant of summary judgment based on the hearing examiner's finding "that Mr. Miller's disappearance was explained and that as of the date of his departure, Mr. Miller intended to continue living." *Id.* at 379. *See also Gardner v. Wilcox,* 370 F.2d 492 (9th Cir. 1966). Similarly, we conclude that in this case there is substantial evidence to support the ALJ's conclusion that, "Since [Brown] wrote the claimant that he intended to change his name and start a new life, the seven year presumption of death cannot be applied."

We recognize that when the Secretary has rebutted the presumption of death, this may establish instead a "presumption of immortality," a presumption contrary to human experience. David Brown would be 69 years old now, and the Secretary will have the same evidence in perpetuity. However, Mrs. Brown is not precluded from filing a new application if she becomes aware of any new evidence of Brown's death. Moreover, we understand that factors such as the wage earner's age and health are weighed in the Secretary's determination of the likelihood that the wage earner has in fact died. *See Gardner v. Wilcox,* 370 F.2d at 494. At some point the Secretary's determination may be so unreasonable that we would not be able to say that it is supported by substantial evidence.

We emphasize that we are not affirming a holding that David Brown is, indeed, alive. However, under the statute it is the claimant who must show entitlement. In this case the Secretary could find that appellant failed to show she is entitled to benefits on the basis of the regulation's presumption of death because, on this record, Brown was not absent "for no apparent reason." Accordingly, we will affirm the judgment of the district court.[4]

---

**4.** We reject appellant's contention that she was denied equal protection or due process because federal employees receive preferential treatment due to the presumption of death after twelve months' disappearance provided by 5 U.S.C. §§ 5565 and 5566. It does not appear from the district court's opinion that this issue was raised there. In any event, we regard it as frivolous. The situations are not at all comparable. These sections are concerned with pay administration of federal employees in active service, and provide for a full agency review of the circumstances prior to making a finding of death which is conclusive on other federal agencies, including the Social Security Administration. *See* 20 C.F.R. § 404.721(a).