972 F.2d 898
 38 Soc.Sec.Rep.Ser. 376, Unempl.Ins.Rep. (CCH) P 16833A
Sherry M. BREWSTER, on Behalf of the Minor Children of
Joseph P. KELLER, Appellant,
v.
Louis SULLIVAN, Secretary of Health and Human Services of
the United States, Appellee.
 No. 91-3172.
 United States Court of Appeals,
Eighth Circuit.
 Submitted May 15, 1992.
Decided Aug. 12, 1992.
 
 Keith J. Halleland, Minneapolis, Minn., argued, for appellant.
 Richard E. Vosepka, Minneapolis, Minn., argued (Donna L. Calvert, Chicago, Ill., on brief), for appellee.
 Before FAGG, Circuit Judge, HENLEY, Senior Circuit Judge, and HANSEN, Circuit Judge.
 HENLEY, Senior Circuit Judge.
 
 
 1
 Sherry M. Brewster, on behalf of the minor children of Joseph P. Keller, appeals from a judgment of the district court upholding a decision of the Secretary of Health and Human Services (Secretary) denying a claim for children's insurance benefits under 42 U.S.C. § 402(d). We reverse and remand with directions to award benefits.
 
 
 2
 Brewster married Keller in 1974. They had two children, Jason and Melissa. Keller was a pilot and an airplane mechanic employed by Air Cortez, which was located in Ontario, California. Keller has been missing since May 1980.
 
 
 3
 In 1981 and 1984 Brewster filed applications for survivors' benefits. Evidence developed in connection with the applications reveal the following. On April 27, 1980, Keller supposedly piloted a company DC-3 airplane from Ontario, California to San Antonio, Texas for modifications. Keller telephoned William Schlick, president of Air Cortez, and informed Schlick that he had arrived in San Antonio and would return to Ontario on May 9 or 10 when the modifications were completed. When Keller failed to arrive, Schlick called the San Antonio airport and learned that Keller had never appeared. Schlick also discovered that a company credit card was missing. He then filed a police report.
 
 
 4
 The Ontario police contacted the San Antonio police and learned that Keller had been under investigation for drug smuggling. According to the police report, the airplane had not landed at the San Antonio airport, but had landed at an airport in Waco, Texas and Keller and John Flowers had been in Waco, Texas from April 27 until May 9. On that day the airplane had refueled with 800 gallons of gasoline, which had been charged with the company credit card, and drug agents saw the airplane depart in a southerly direction. A confidential informant told the police that the airplane might be located in Barranquilla, Colombia, South America. The police report also stated that Brewster and Keller's brother John had been informed that Keller had died in an airplane crash in Colombia, South America. The police terminated their investigation and advised Keller's family to contact the American Consulate in South America.
 
 
 5
 The family contacted the consulate in Barranquilla and were informed that a DC-3 airplane with two bodies had crashed on May 13, 1980 near Barranquilla, but neither the airplane nor the bodies could be positively identified. Keller's family was unable to supply adequate dental records to permit identification.
 
 
 6
 During the course of the investigation, officers searched Keller's locker at Air Cortez and his apartment. In the locker, officers found a grenade and a driver's license and birth certificate in the name of Emery Whitthram. Officers learned that Keller had stated on several occasions that he wanted "to chuck it all and move to Costa Rica."
 
 
 7
 The Secretary denied the applications on the ground that Brewster had failed to submit direct evidence that Keller was dead, and because Keller had not yet been missing for seven years he could not be presumed dead under the regulations. In May 1987 Brewster filed a third application, relying on the presumption of death created by 20 C.F.R. § 404.721(b). The regulation provides that if a claimant cannot prove that a person is dead, the Secretary will presume death if the claimant provides "[s]igned statements by those in a position to know or other records which show that the person has been absent from his or her residence for no apparent reason, and has not been heard from, for at least 7 years."
 
 
 8
 In addition to the information previously submitted, Brewster submitted a statement indicating that neither she nor her children had seen or heard from Keller since May 1980 and that she believed he had died in an airplane crash in Colombia, South America in May 1980. She also provided statements from friends and relatives stating that they had not heard from Keller since May 1980 and knew of no problems that would account for his disappearance and a report from John Flowers' father that he had not heard from Flowers since 1980.
 
 
 9
 Initially, the application was granted, but the case was reopened, and on reconsideration the decision awarding benefits was reversed. Brewster appealed, contending that under the regulation she raised the presumption of death and the Secretary had not rebutted it. After a hearing, an administrative law judge (ALJ) upheld the denial, finding that Brewster had not established that Keller had disappeared for "no apparent reason." The ALJ believed that while it was possible that Keller and Flowers had died in the plane crash, it was also possible that Keller had gone into hiding because he was under investigation for drug smuggling or because he had stolen the airplane and credit card, noting that a fictitious driver's license and birth certificate were found in Keller's locker. The ALJ also thought that it was possible that Keller had "arranged the crash of the aircraft by use of a grenade modified in a similar way to the one found among Keller's possessions." The Appeals Councils upheld the denial of benefits.
 
 
 10
 Brewster appealed the decision to the district court, arguing that she had established the presumption of death under the regulation and that the Secretary had produced no affirmative evidence to rebut it. Brewster relied on cases from five courts of appeals holding that under the regulation[1] "when the facts show that a person has been absent from his residence and unheard for a period of seven years, a presumption arises that he is dead." Aubrey v. Richardson, 462 F.2d 782, 784 (3d Cir.1972) (quoting Secretary v. Meza, 368 F.2d 389, 392 (9th Cir.1966)). See also Autrey v. Harris, 639 F.2d 1233 (5th Cir.1983); Edwards v. Califano, 619 F.2d 865 (10th Cir.1980); and Johnson v. Califano, 607 F.2d 1178 (6th Cir.1979). These courts, however, hold that "[t]he presumption is not irrebuttable ... and once the presumption is established, 'the burden of persuasion shifts to the Secretary, and the presumption can be dissipated by proof of facts that rationally explain the anomaly of the disappearance in a manner consistent with continued life.' " Aubrey v. Richardson, 462 F.2d at 784 (quoting Gardner v. Wilcox, 370 F.2d 492, 494 (9th Cir.1966)).
 
 
 11
 In response, the Secretary acknowledged that he had acquiesced in the decisions cited by Brewster, but argued the cases were wrongly decided. The Secretary maintained that under the regulation a claimant not only had the burden of proving that a wage earner had disappeared for seven years, but also had the burden of proving there was no apparent reason for the disappearance.[2] The Secretary argued that Brewster had not proved that Keller had been missing for "no apparent reason," and in the alternative argued he had rebutted the presumption of death.
 
 
 12
 The district court noted that the Eighth Circuit had not interpreted the regulation. Rejecting the appellate courts' interpretations of the regulation, the district court agreed with the Secretary that the regulation required a claimant to prove that a wage earner's disappearance was for no apparent reason and that Brewster had failed to raise the presumption. In the alternative, the court held that even if the presumption had arisen, the Secretary had rebutted it.
 
 
 13
 "The arguments on appeal [focus] on the proper standards for raising and rebutting the presumption of death under 20 C.F.R. § 704.721(b)."[3] Mando v. Secretary, 737 F.2d 278 (2d Cir.1984). We acknowledge that as a general rule an agency's interpretation of its own regulation is entitled to great deference. Lile v. University of Iowa Hosp. & Clinics, 886 F.2d 157, 160 (8th Cir.1989). However, courts are not obligated to give such deference to "an agency's interpretation ... which is not based on expertise in its particular field but is rather based on general common law principles," Edwards v. Califano, 619 F.2d at 869, or if the agency's interpretation is inconsistent with the regulation. Creighton Omaha Regional Health Care Corp. v. Bowen, 822 F.2d 785, 789 (8th Cir.1987). In addition, courts do not defer to an agency's litigating position. McKee v. Sullivan, 903 F.2d 1436, 1438-39 n. 3 (11th Cir.1990).
 
 
 14
 We agree with the courts of appeal that have addressed the issue and hold that under 20 C.F.R. § 404.721(b) a presumption of death arises when a claimant proves a wage earner has not been seen or heard from for seven years. First, "[w]e believe this rule is consistent with the common-law origin of the presumption of death. At common law, when a seven year absence occurred, the ordinary presumption of ongoing life ceased and the presumption of death arose." Johnson v. Califano, 607 F.2d at 1182 n. 10. "The policy behind this rule is that it is unfair to require that the affairs of other persons affected by those of the missing person be held in abeyance indeterminately, especially, when there is a good chance the missing person is in fact dead." Allen, Presumptions in Civil Actions Reconsidered, 66 Iowa Law Review, 843, 847 (1981).[4]
 
 
 15
 Second, we believe that the Secretary's position that the claimant must prove that a wage earner's disappearance was for no apparent reason "virtually creates a presumption of life rather than death. There is nothing in the regulation which requires the claimant to refute every reasonable theory or explanation which may be potentially present or which the Secretary may suggest." Aubrey v. Richardson, 462 F.2d at 784. As the other courts of appeals have stated, " 'we cannot go along with the [Secretary's] apparent view that one achieves immortality' by disappearing under circumstances not free from doubt. Indeed, such a view would frustrate the purpose of the presumption and eternally render its effect nugatory in all but the clearest cases." Id. at 785 (quoting Christen v. Secretary, 439 F.2d 715, 715 (9th Cir.1971)).
 
 
 16
 We thus find that Brewster has raised a presumption that Keller is dead.
 
 
 17
 We also find that the Secretary has failed to rebut the presumption. To rebut the presumption of death "requires more from the Secretary than mere conjecture as to possible explanations for the wage earners's disappearance." Id. The Secretary must prove " 'facts' which do--not merely may--'rationally explain the anomaly of the disappearance in a manner consistent with continued life.' " Id. (quoting Secretary v. Meza, 368 F.2d at 393). Courts have required more than "mere conjecture" because "in every person's life there are difficulties which could, in the event of a disappearance, inferentially provide plausible explanations for an absence." Johnson v. Califano, 607 F.2d at 1183.
 
 
 18
 In this case, the Secretary argues that he has rebutted the presumption of death by providing "facts" that explain Keller's "disappearance in a manner consistent with continued life." The Secretary notes that Keller was under investigation for drug smuggling and had stolen an airplane and credit card. He also notes that a grenade and fictitious identification were found in Keller's possessions in California and further notes Keller's statements expressing a desire to live in Costa Rica.
 
 
 19
 We disagree that these "facts" are sufficient to rebut the presumption that Keller is dead. As Brewster points out, the record reveals no evidence that Keller was aware of the drug investigation or had taken other fictitious identification to Texas. Nor does the record indicate that criminal charges had ever been filed in connection with the alleged theft of the airplane and credit card. In similar circumstances, the Third Circuit has refused to find that the Secretary rebutted a presumption of death. In Shelnutt v. Heckler, 723 F.2d 1131, 1134 (3d Cir.1983), Shelnutt was a stockbroker who disappeared after telling his family he was going on a business trip to Idaho, taking approximately $18,000.00 of investors' money with him. The Secretary argued that Shelnutt had fled alleged marital and financial difficulties by absconding with his clients' money and noted that criminal charges had been filed. The court found the facts insufficient to rebut the presumption of death. Although the court had some trouble with the fact that criminal charges had been filed, it stated because the charges were filed after Shelnutt's disappearance, the court did not "know whether the possibility of criminal charges was the cause or the result of Shelnutt's disappearance." Id. at 1134.[5]
 
 
 20
 We also believe little weight should be given to Keller's statements that he wanted to "chuck it all and move to Costa Rica." See Autrey v. Harris, 639 F.2d at 1235 (failure to file income tax returns coupled with random comments regarding marital difficulties insufficient to overcome presumption). Moreover, we find the Secretary's scenario which has Keller blowing up the airplane with two occupants in order to engineer "a phony disappearance ... a somewhat bizarre and certainly speculative conclusion." See id.
 
 
 21
 Our review of the applicable caselaw provides further support for our conclusion that in this case the Secretary has failed to rebut the presumption of death. See Wages v. Schweiker, 659 F.2d 59 (5th Cir.1981) (wage earner's disappearance after receiving spousal support order and withdrawal of funds from bank account insufficient to rebut presumption); Johnson v. Califano, 607 F.2d at 1178 (evidence of wage earner's severe marital and career difficulties insufficient to rebut presumption); Edwards v. Califano, 619 F.2d at 865 (evidence that wage earner was alive four years after abandoning family insufficient); Secretary v. Meza, 368 F.2d at 389 (evidence suggesting that wage earner was attempting to avoid child support payments insufficient).
 
 
 22
 We note there are cases in which courts have found that the Secretary had produced sufficient evidence to rebut a presumption of death, see, e.g., Mando v. Secretary, 737 F.2d at 280 (husband disappeared one week before sentencing on gun conviction, after telling his wife "that he might go away for a long time");[6] Brown v. Heckler, 723 F.2d 1135, 1137-38 (3d Cir.1983) (husband disappeared and later wrote wife that he was leaving country and had changed his name and identification), but we find them distinguishable.
 
 
 23
 We further note that in this case, unlike many unexplained disappearances, we believe there is strong circumstantial evidence that Keller is dead. A DC-3 airplane with two bodies, which were burned beyond recognition,[7] had crashed near Barranquilla, South America, which was where a confidential informant had advised the police the airplane could be found and corroborates the information Brewster had heard and reported in May 1980.
 
 
 24
 Accordingly, the judgment is reversed and the case is remanded to the district court with instructions to remand to the Secretary for an award of children's benefits.[8]
 
 
 25
 HANSEN, Circuit Judge, dissenting.
 
 
 26
 As noted in footnote three of the majority's opinion, the legal issue concerning the correct standards for the burden of proof under 20 C.F.R. § 404.721(b) must be decided before determining whether the ALJ's decision is supported by substantial evidence. Ordinarily, a case is remanded to the ALJ when the burden of proof was not properly applied rather than reversing and awarding benefits outright, unless the outcome is clear regardless of who bears the burden of proof. Talbott v. Bowen, 821 F.2d 511, 514 (8th Cir.1987); see also Jeffery v. Secretary, 849 F.2d 1129, 1133 (8th Cir.1988) (requiring "overwhelming" evidence for directing an award of benefits). I do not believe this case is so clear as to permit an award of benefits to be directed instead of remanding the case. Therefore, I respectfully dissent.
 
 
 
 [1]
 "Until 1979, [20 C.F.R. § 404.721] was codified at 20 C.F.R. § 404.705 and contained slightly different wording, requiring an 'unexplained absence' rather than an absence 'for no apparent reason'; the amendment did not effect any change in the law." Shelnutt v. Heckler, 723 F.2d 1131, 1133 n. 1 (3d Cir.1983)
 
 
 [2]
 The Secretary suggested that the Seventh Circuit in Blew v. Richardson, 484 F.2d 889, 892-92 (7th Cir.1973), had adopted his interpretation of the regulation. However, the court in Blew "did not directly confront the issue of the burden of proof" under the regulation. Johnson v. Califano, 607 F.2d at 1182 n. 9
 
 
 [3]
 At oral argument, the Secretary argued that the only issue before this court was whether the decision denying benefits was supported by substantial evidence. Before this court can consider whether substantial evidence supports the decision, we must first consider the legal issue concerning the burdens of proof under 20 C.F.R. § 404.721(b). See Shelnutt v. Heckler, 723 F.2d at 1135
 
 
 [4]
 Abandoned spouses may face the predicament of remarriage. In this case, in 1984 Brewster obtained a California court order decreeing that Keller had died in an airplane crash in 1980 in Columbia, South America. In 1985 Brewster remarried. Brewster appears to concede that the state court order is not binding on the Secretary. See Shelnutt v. Heckler, 723 F.2d at 1133 n. 2
 Some states have "Enoch Arden" laws, which provide that after a spouse has been missing for a specified period of time, the abandoned spouse may remarry and the remarriage is deemed valid. See Norris v. Norris, 324 F.2d 826 (9th Cir.1963). The laws were named after a Lord Tennyson poem published in 1864 entitled "Enoch Arden," which details the plight of a sailor who returned home after having been lost at sea for seven years to find his wife remarried.
 
 
 [5]
 In Shelnutt, 723 F.2d at 1135, the court distinguished Gardner v. Wilcox, 370 F.2d 492 (9th Cir.1966), which the Secretary relies on in this case. In Gardner, a wage earner had taken money from his employer and first told his wife that he would straighten the matter out, but later indicated he intended to commit suicide. The court found that the Secretary had rebutted a presumption of death by showing that Gardner had anticipated criminal charges would be filed
 
 
 [6]
 In Mando, the court explained that the "consequence of rebutting the presumption ... is simply that it is not in the case." 737 F.2d at 282. The court further explained that "[w]ith the presumption out of the case, the ALJ as factfinder should have weighed the evidence and decided between the competing explanations for the absence of appellant's husband." Id. Although the court was inclined to believe the wife's explanation that her husband had been "rubbed out" by organized crime, it remanded the case to the ALJ, with instructions to consider the "lengthy absence and the other evidence offered by appellant in support of the probability 'of death in light of all the known facts.' " Id. (quoting Gardner v. Wilcox, 370 F.2d at 494-95)
 
 
 [7]
 At oral argument, the Secretary expressed surprise that Keller's family was unable to provide adequate dental records to permit identification of the burned bodies. The record on appeal indicates attempts were made. Brewster wrote the Veterans Administration for records, but because Keller had not been a claimant, it had no records. A cable from the United States Consulate indicates that Keller's mother forwarded $2000.00 and a dental questionnaire so that a positive identification could be made. The questionnaire, however, was inadequate, and after the family was unable to obtain adequate records, the consulate returned the money
 
 
 [8]
 The regulations authorize the Secretary to reopen Brewster's previous applications. 20 C.F.R. § 404.988(c)(4)(i) provides that an application may be reopened "at any time if [y]our claim was denied because you did not prove that the insured person died, and the death is later established [b]y reason of an unexplained absence from his or her residence for a period of 7 years." See Boyd v. Bowen, 797 F.2d 624, 627 (8th Cir.1986)